## WILLIAMS *v.* BRUFFY.

1. This court, in *Martin* v. *Hunter's Lessee* (1 Wheat. 85), affirmed the constitutionality of sect. 25 of the Judiciary Act of 1789 (1 Stat. 85, re-enacted in sect. 709, Rev. Stat.), which, in certain cases therein mentioned, confers on this court jurisdiction to re-examine upon a writ of error the final judgment or decree in any suit in the highest court of a State in which a decision in the suit could be had. The doctrine then asserted, and ever since maintained, cannot be questioned here.
2. That jurisdiction attaches whenever the highest court of a State, by any decision which involves a Federal question, affirms or denies the validity of the judgment of an inferior court, over which it can by law exercise appellate authority, whether the decision, after an examination of the record of that judgment, be expressed by refusing a writ of error or *supersedeas*, or by dismissing a writ previously allowed.
3. This court, when it has once acquired jurisdiction, may, in order to enforce its judgment, send its process to either the appellate, or the inferior, court.

*Mr. Enoch Totten* presented the petition of the plaintiffs in error, in *Williams* v. *Bruffy* (96 U. S. 176), in error to the Supreme Court of Appeals of the State of Virginia, for such proceedings as will render effectual the judgment of this court.

MR. JUSTICE FIELD delivered the opinion of the court.

The Court of Appeals of Virginia declines to enforce the mandate of this court issued in this case, and the petition of the plaintiffs in error is that this court will take such proceeedings as will render its judgment effectual.

The plaintiffs in error are citizens of the State of Pennsylvania, and in 1866 they instituted an action in the Circuit Court of Rockingham County, Virginia, against the administrator of the estate of one George Bruffy, deceased, who, at the time of his death, was a citizen of Virginia, for the value of certain goods sold by them to him in March, 1861.

The administrator appeared to the action and pleaded the general issue, and certain special pleas, the substance of which was that Pennsylvania was one of the United States, and

that Virginia was one of the States which had formed a confederation known as the Confederate States; that from some time in 1861 until some time in 1865 the government of the United States was at war with the government of the Confederate States; and that by a law of the Confederate States debts to alien enemies were sequestered; that the intestate had paid over the amount claimed in this action to a receiver in those States appointed under that law, and was thus discharged from the debt to the plaintiffs.

To these pleas the plaintiffs demurred; but the demurrers were overruled. The case was then submitted to the court upon certain depositions and an agreed statement of facts. They established the sale and delivery of the goods for which the action was brought; the residence of the plaintiffs in Pennsylvania and of the deceased in Virginia, during the war; the payment by the latter of the debt claimed to the sequestrator of the Confederate government under a judgment of a Confederate court. The Circuit Court of Rockingham County, therefore, gave judgment for the defendant; and the plaintiffs applied to the Supreme Court of Appeals of the State for a writ of *supersedeas* to bring the case before it for review.

In the courts of other States, a *supersedeas* is merely an auxiliary process designed to supersede the enforcement of the judgment of the court below brought up by writ of error for review. But in Virginia it serves a different purpose. "There," says Robinson, in his treatise on the practice in the courts of that State, "the writ of error is never used as a means of removing the judgment of an inferior court before a superior tribunal, except in those cases in which security is dispensed with. In practice, the *supersedeas* is a substitute for the writ of error in all cases in which it is designed that the judgment of the court below shall be *superseded*." Vol. i. p. 660; *White* v. *Jones*, 1 Wash. (Va.) 118; *Burwell* v. *Anderson*, 2 id. 194; *Wingfield* v. *Crenshaw*, 3 Hen. & M. (Va.) 245.

By the law of that State, when application is made to the Supreme Court of Appeals for a writ of *supersedeas*, the court looks into the record of the case, and only allows the writ

when of opinion that the decision complained of ought to be reviewed. Its action upon the record is in effect a determination whether or not it presents a sufficient question for the consideration of the court. If it deem the judgment of the court below " plainly right," and reject the application on that ground, and its order of rejection so state, no further application for the writ can be presented; the judgment of the court below is thenceforth irreversible. So, in effect, its refusal of the writ on that ground is equivalent to an affirmance of the judgment, for the reason that the record discloses no error.

In the present case, the Supreme Court of Appeals denied the writ, stating in its order that it was of opinion that the judgment of the court of Rockingham County was " plainly right." To review this action of the Court of Appeals, — this determination as to the character of the judgment rendered in the Circuit Court, — a writ of error was prosecuted from this court. It was issued to the Court of Appeals, and was returned with a transcript of the record on file in the office of its clerk, properly certified, and the case was elaborately argued here by counsel. We came to the conclusion unanimously that the judgment of the Circuit Court of Rockingham County was erroneous, that the demurrers to the special pleas should have been sustained, and that the plaintiffs should have had judgment upon the agreed statement of facts for the amount of their claim, with interest from its maturity, deducting in the computation of time the period during which the war continued. We accordingly directed that the action of the Court of Appeals of Virginia, in refusing a *supersedeas* of the judgment of the Circuit Court, should be reversed, and that the cause should be remanded to it for further proceedings in accordance with our opinion. The judgment of this court was accordingly certified to that court, and presented to it in April, 1879. In April of the present year that court declined to take action upon our mandate, for reasons embodied in its opinion, at the time entered in its records. That opinion is as follows : —

" VIRGINIA.

" In the Supreme Court of Appeals, held at the State Court House, in the city of Richmond, on Saturday, the twenty-fourth day of April, 1880.

| | |
|---|---|
| " CHARLES B. WILLIAMS and JAMES D. ARNEST, partners under the firm name of WILLIAMS & ARNEST, Plaintiffs, *against* JASON N. BRUFFY, Administrator of GEORGE BRUFFY, deceased, Defendant. | Upon a mandate from the Supreme Court of the United States. |

" This court, having maturely considered the mandate of the Supreme Court of the United States, is of opinion that, according to the true intent and meaning of said mandate, this court is required to grant a writ of error or *supersedeas* to the judgment of the Circuit Court of Rockingham County.

" This court, at a former term, held at Staunton, Virginia, had refused such writ in the same case, being of opinion that the 'said judgment is plainly right.' By such refusal the said judgment of the Circuit Court of Rockingham had become irreversible, and placed beyond the control and jurisdiction of this court. It was at one time a pending cause in this court. There is no mode by which the decision of an inferior court can be reversed here, except upon an appeal allowed or writ of error granted and duly perfected in conformity with the statutes made and provided. If, therefore, the mandate of the Supreme Court of the United States shall be entered on the records of this court, it must be inoperative and of no effect, unless this court shall now grant a writ of error, or writ of error and *supersedeas*, to the said judgment of the Circuit Court of Rockingham County. That judgment was rendered on the 18th of April, 1871. The seventeenth section of chapter 178, Code of 1873, provides that no process shall issue upon an appeal, writ of error, or *supersedeas* to or from a final judgment or decree, if, when the record is delivered to the clerk of the appellate court, there shall have elapsed two years since the date of such final judgment, decree, or order; but the appeal, writ of error, or *supersedeas shall be dismissed whenever it appears* that two years have elapsed since the said date before the record is delivered to such clerk. So that, if the court should now grant the writ of error and *supersedeas*, no process could issue thereon; and if such process

should issue, the writ of error or *supersedeas* must hereafter be dismissed by the express mandate of the statute. It is further provided, except in certain enumerated cases, that a writ of error or *supersedeas* shall not take effect until bond is given by the petitioner in a penalty, and with certain conditions prescribed; and if two years elapse from the date of such final judgment or decree before such bond is given, the appeal, writ of error, or *supersedeas*, shall be dismissed. See sects. 13 and 17, c. 178, Code of 1873. In the present case, the record has not been delivered to the clerk of this court, nor has any such bond been given as is required of the petitioner, nor indeed can be. These considerations are sufficient to show that no writ of error or *supersedeas* can now be granted, or, if granted, it must be dismissed, unless this court is authorized to disregard the plain letter of the statute under which it exercises its appellate jurisdiction. It may be further added, that when this court deems the decision of the inferior court plainly right, and rejects the application for appeal on that ground, no other appeal, writ of error, or *supersedeas* can afterwards be granted by this court in the said case. See sect. 10, c. 178, Code of 1873.

"For these reasons, this court, with the highest respect and consideration for the Supreme Court of the United States, must decline to take any further action with respect to the mandate of said court.

"This entry is made on the record book of this court in conformity with the request and at the suggestion of the counsel for the petitioners.

"A copy. — Teste:                              GEO. K. TAYLOR, *C. C.*"

The petitioners accordingly pray that this court will take such action as may be proper and needful in the premises to give efficacy to its judgment.

We do not understand that the Court of Appeals intends by its refusal to deny or question the appellate power of this tribunal in cases arising in the State court where the validity of a statute of, or of an authority exercised under, the State is drawn in question, on the ground of its repugnancy to the Constitution and laws of the United States, and the decision is in favor of its validity. Its appellate jurisdiction over the judgments of the State courts in such cases, and other cases mentioned in the twenty-fifth section of the Judiciary Act of 1789 (re-enacted in the Revised Statutes), passed beyond the region of discus-

sion in this court more than half a century ago. As early as 1816, in the celebrated case of *Martin* v. *Hunter's Lessee,* this court, in an opinion of unanswerable reasoning, from the general language of the Constitution, asserted its appellate jurisdiction over the State courts in the cases mentioned in the act. It also showed that the jurisdiction had been sustained in a great variety of cases, and that the doctrine had been acquiesced in by enlightened State courts without a judicial doubt being breathed until that case arose. No doctrine of this court rests upon more solid foundations, or is more fully valued and cherished, than that which sustains its appellate power over State courts where the Constitution, laws, and treaties of the United States are drawn in question, and their authority is denied or evaded, or where any right is asserted under a State law or authority in conflict with them. And in no class of cases could that jurisdiction be more properly invoked than when, by enactments of a revolutionary organization against the government of the United States, the property or the rights of citizens of the loyal States are attempted to be destroyed or impaired because of their loyalty to the Union.

The main reason assigned by the Court of Appeals for declining to act upon our mandate, as seen by its opinion, is the lapse of over two years from the date of the rendition of the judgment of the Circuit Court of Rockingham County, and the delivery of the record to that court. The judgment was rendered on the 18th of April, 1871, and the petition for the *supersedeas* with the record was not presented to the court and delivered to its clerk until the 12th of September, 1874. The Court of Appeals, it is true, in its opinion, states that the record has not been delivered to its clerk; but this is evidently an inadvertence, as the transcript before us shows that such record was filed with him on the day mentioned. The court also adds, as further reasons for its action, that a bond with a certain penalty and prescribed conditions was required to be given within like period before a *supersedeas* could take effect, and that no such bond was given in the case; and also, that when the Court of Appeals deems a decision of the inferior court plainly right, and rejects an application for an appeal on that ground, no other appeal or *supersedeas* can afterwards be granted.

Thèse last two grounds do not impress us as having force, for a bond could not be required until the writ is allowed. And the ground of refusing the writ, that the decision in the inferior court was plainly right, being itself held to be untenable, there could be no reason why the order of denial should not be reversed, and an order granting the writ entered in its place, as in the case of reversals of other orders.

As to the lapse of more than two years between the date of the judgment and the delivery of the record to the clerk of the appellate court, it is sufficient to observe that the Court of Appeals gave no effect to that circumstance; and we could not say it had no authority after that time to look into the record of the inferior court. We could not say what facts may have existed which prevented the operation of the statute, or what proceedings may have been necessary, according to the practice of the court, to enable parties to avail themselves of the lapse of time. The court did not refuse to receive the petition of the plaintiffs in error on the ground that it was presented too late, nor did it afterwards dismiss the petition for that reason. It took jurisdiction of it so far as to examine the record of the judgment of the court below, and to pass upon its character. In its judgment, entered in its records, it states that the petition, " having been maturely considered, and the transcript of the said judgment seen and inspected, the court being of opinion that said judgment is plainly right, doth deny the said *supersedeas.*" That judgment, thus entered, is a final determination of the character of the judgment of the inferior court. Although in the form of denying the *supersedeas*, it is not essentially different in its character and effect from a judgment dismissing such writ after it had been once granted and the merits of the case heard. So long as it remains unreversed, it will be authority to all the inferior courts of Virginia that the confiscation of debts due to loyal citizens, under an act of the Confederate government, enforced as a law of the State, was a valid proceeding. It is, therefore, the subject of review in this court. *The Richmond, &c. Railroad Co.* v. *The Louisa Railroad Co.*, 13 How. 71. It is enough for our jurisdiction over the case that there was a final judgment of the Court of Appeals, and our jurisdiction

cannot be now ousted, after we have acted upon the case and passed upon its merits, by any suggestion that that court never took jurisdiction to look into the record of the inferior court and determine the character of its judgment; nor can we listen to any such suggestion in contradiction of the record of the case. In the elaborate argument of counsel of the case before us, though several objections were urged to our jurisdiction, no intimation was made of the want of jurisdiction by the Court of Appeals. *Skillern's Executors* v. *May's Executors*, 6 Cranch, 267; *Ex parte Story*, 12 Pet. 339; *Washington Bridge Co.* v. *Stewart*, 3 How. 413.

Whenever the highest court of a State by any form of decision affirms or denies the validity of a judgment of an inferior court, over which it by law can exercise appellate authority, the jurisdiction of this court to review such decision, if it involve a Federal question, will, upon a proper proceeding, attach. It cannot make any difference whether, after an examination of the record of the court below, such decision be expressed by refusing a writ of error or *supersedeas*, or by dismissing a writ previously allowed. And when this court has once acquired jurisdiction, it may send its process, in the enforcement of its judgment, to the appellate court of the State, or to the inferior court whose judgment is reversed. Had the Court of Appeals, after assuming jurisdiction so far as to examine the record of the inferior court and pass upon its action, granted the *supersedeas* and rendered in the case the judgment which, in our opinion, should have been rendered, the judgment of the inferior court would have been reversed, and judgment ordered in favor of the plaintiffs in error. Having jurisdiction of the case, we can now direct that such reversal be made and such judgment be entered.

But inasmuch as the Court of Appeals finds itself embarrassed in its action upon our mandate by reason of the statute, to which no reference was made in its original decision, we will direct that the mandate be recalled, and that final judgment be entered in this court reversing the judgment of the Circuit Court of Rockingham County, and awarding judgment to the plaintiffs for the amount appearing from the record

and the agreed statement of facts to be due to them on their claim, with interest from its maturity, deducting in the computation of time the period of the war ; the judgment to be paid by the defendant as administrator out of the estate of the deceased George Bruffy, in like manner as other claims established against his estate ; and it is

*So ordered.*