[Sac. No. 1968. In Bank.—March 5, 1912.]

A. T. KARRY et al., Petitioners, v. SUPERIOR COURT OF SAN JOAQUIN COUNTY, and J. A. PLUMMER, Judge thereof, Respondents.

JURISDICTION — JUSTICES' COURTS — BOND FOR COSTS IN ATTACHMENT SUIT—ACTION TO ENFORCE BOND PENDING APPEAL FROM JUDGMENT. —Where judgment for costs in an amount less than three hundred dollars is rendered in favor of the defendant in an action in the superior court in which an attachment had been issued, and an appeal therefrom to the supreme court had been duly perfected by the plaintiff and the execution of the judgment stayed, a justice's

court and the superior court on appeal, have jurisdiction of an action to enforce the bond given to secure the payment of the costs in the attachment suit, notwithstanding the appeal from the judgment therein is still pending and undetermined.

ID.—PENDENCY OF APPEAL MATTER OF DEFENSE—ERROR IN EXERCISE OF JURISDICTION—CERTIORARI.—The pendency of the appeal from and the stay of the judgment for costs in the attachment suit were mere matters of defense to the action in the justice's court and did not divest it of jurisdiction, nor the superior court of jurisdiction on appeal, and any error committed by such courts in the determination of the legal effect of those matters, although they were shown without conflict by the evidence adduced on the trial, was error in the exercise of jurisdiction that cannot be reviewed on *certiorari.*

ID.—ERRONEOUS DECISION DOES NOT EFFECT JURISDICTION.—A court has jurisdiction to decide wrongly as well as correctly, and the only remedy of a party aggrieved by a merely erroneous decision is such as may be afforded by our statutory provisions relating to motions for a new trial and appeals. If no such remedy be given, the action of the trial court within its jurisdiction is conclusive.

APPLICATION for a Writ of Certiorari, to review a judgment of the Superior Court of San Joaquin County, originally commenced in the district court of appeal for the third appellate district, and transferred to the supreme court after decision by that court.

The facts are stated in the opinion of the court.

R. W. Dodge, for Petitioners.

Webster, Webster & Blewett, for Respondents.

ANGELLOTTI, J.—This is a proceeding in *certiorari*, originally commenced in the district court of appeal for the third district, and transferred to this court after decision by that court.

The purpose of the proceeding, as stated in the prayer of the petition for *certiorari*, was to annul a judgment of the superior court of San Joaquin County, given and made in a certain action pending therein on an appeal from a justice's court of one of the townships of said county, in which action one Fannie Fieg was the plaintiff, and the petitioners herein were the defendants. The action was one within the jurisdiction of the justice's court, being for the sum of $295.75 for and on account of costs incurred by Fanny Fieg in a certain

action theretofore begun and prosecuted by petitioner Gjurich against her in the superior court of said county, and damages by reason of an attachment levied on her property in said action, and being on the bond or undertaking given for such costs and damages in said action by said petitioner and his co-petitioners, the sureties on such bond. The justices' courts have jurisdiction "in actions upon bonds or undertakings conditioned for the payment of money, if the sum claimed does not amount to three hundred dollars, though the penalty may exceed that sum." (Code Civ. Proc., sec. 112, subd. 5.) It is not questioned that the justice's court acquired jurisdiction of the persons of the defendants in such action, that they appeared therein and presented their defense to the action, that the justice's court gave its judgment in favor of Fanny Fieg, the plaintiff therein, that the petitioner herein, defendants therein, regularly appealed from such judgment to the superior court of San Joaquin County, that the action was regularly tried in said superior court on such appeal, and that said superior court gave jugment on the merits in favor of said Fanny Fieg and against these petitioners for the sum of $145.71.

The claim that this judgment was in *excess of the jurisdiction of the superior court,* for of course it is not claimed that *certiorari* will lie unless such jurisdiction has been exceeded, is based solely on the following facts which are alleged to exist, and which, for all the purposes of this proceeding, may be conceded to exist. The judgment of the superior court in the former action of Gjurich *v.* Fieg was against the plaintiff and in favor of said Fieg for her costs, taxed at $145.71. This $145.71 was the money said Fieg was suing to recover in her justice's court action against petitioners. Prior to the commencement of the justice's court action, Gjurich had regularly appealed from such judgment to this court, and such appeal is still pending and undetermined. It may be conceded here, as held by the district court of appeal, that the effect of this appeal was to stay "all further proceedings in the court below upon the judgment or order appealed from, or upon the matters embraced therein." (Code Civ. Proc., sec. 946.) The point of respondents in this connection, one apparently held good by the learned trial judge of the superior court in giving judgment in the subsequent justice's court action, is that as

there was no bond given by Gjurich on his appeal to stay the enforcement of the judgment for costs, no stay was effected by the appeal. (Code Civ. Proc., sec. 942.) We do not deem it important to consider this question here, and assume that the effect of the appeal was as stated in the above quotation from section 946 of the Code of Civil Procedure. There are other facts that are perhaps material on the question of said Fieg's present right to damages by reason of the attachment, but they present no legal question material here differing from the question presented relative to the costs, and as the judgment complained of here awarded her nothing on account of such damages, it is unnecessary to set forth such facts.

It is very clear that the facts recited show no excess of jurisdiction on the part of the superior court in its disposition of the justice's court action appealed by petitioners to it. Granting everything claimed as to the facts, nothing more than error in the exercise of its jurisdiction is shown. The justice's court, as we have seen, has jurisdiction of this class of actions, where the amount claimed is less than three hundred dollars. The appeal from the judgment therein given brought the case within the jurisdiction of the superior court. It is not claimed that the facts alleged in the complaint were not sufficient to state a cause of action, though even this is not essential to jurisdiction. The matters alleged by petitioners were all matters of defense, to be set forth by them in that action and to be passed upon by the trial court, as they were. No material difference is perceived between such defenses in an action for the recovery of money, and any other defenses that might be made, such for instance as a defense that the alleged bond had not been executed, or that plaintiff was estopped by a former judgment in the same matter. It was for the superior court, in the exercise of its jurisdiction, to determine the effect of the matters alleged in defense, and to give judgment according to its determination. Any error that it may have committed in the way of mistaking the facts, or the legal effect of admitted facts, with the result that its judgment awarded to the plaintiff money which she should not have recovered, was simply error in the exercise of its jurisdiction. As has often been said, a court has *jurisdiction* to decide wrongly as well as correctly, and the only remedy of a party aggrieved by a merely erroneous decision is such as

may be afforded by our statutory provisions relating to motions for a new trial and appeals. If no such remedy be given, the action of the trial court *within its jurisdiction* is conclusive. The fact that there was no conflict in the evidence adduced on the trial can make no difference. It has never been held, and of course never can be held if elementary principles relative to jurisdiction are kept in mind, that a judgment on the merits totally at variance with the admitted facts is, for that reason alone, in excess of the jurisdiction of the court giving it. Such a judgment is simply erroneous. The syllabus to *Monreal* v. *Bush*, 46 Cal. 79, which correctly states the matters decided, illustrates the principle applicable here. It is · as follows : "The rendition of the judgment for a demand which was not due when the action was commenced, is not an excess of jurisdiction, but error in the exercise of jurisdiction." The application there was for a writ of *certiorari* to annul a judgment of the county court on appeal from a justice's court judgment, and the writ was denied on the ground stated in the syllabus. We deem it entirely unnecessary to cite other authorities in support of what we have said. Decisions to the effect that *mandamus* will lie to compel a court having jurisdiction of an appeal to proceed with the hearing thereof where the admitted facts show such jurisdiction, notwithstanding that such court has held that such admitted facts do not give jurisdiction, or that *certiorari* will lie to annul an order dismissing an appeal under such circumstances, or that prohibition will lie to prevent a court proceeding with the hearing of an appeal where the admitted facts show that it has no jurisdiction, notwithstanding its own decision to the contrary, are not in point at all. Such decisions simply mean that a court cannot give itself jurisdiction or divest itself of jurisdiction by an erroneous decision as to the legal effect of admitted facts. And, of course, decisions staying the hand of the court that has given a judgment or order, where an appeal has been taken that stays the operation of such judgment or order, from proceeding with the enforcement · thereof, are not in point. We have no such case here. The apparent mistake of the learned district court of appeal in this matter was in considering the two actions as being connected in such a way as to make the justice court action in legal effect a proceeding to enforce the former judgment in the same manner and to the

same extent that a motion in the superior court in the former case for the issuance of an execution would have been such a proceeding. So far as any question of jurisdiction is concerned, the two cases were entirely separate and distinct. The proceedings in the first case were available to petitioners as matters of defense in the second case, to be given such weight therein as the trial court deemed them entitled to under the law. But they could not operate to divest that court of the jurisdiction that it had over the subject-matter of the action and the persons of the defendants. We have here no different case in principle from the one we would have if the action had been one on a promissory note for one hundred dollars, appealed to the superior court, and not only the answer and the uncontradicted evidence, but also the findings showed that the note had been fully paid, and nevertheless the superior court had given judgment in favor of the plaintiff for the full amount of the note. Such a judgment would, of course, be erroneous, but there would have been no excess of jurisdiction, and the aggrieved party would have been without any remedy by way of *certiorari*. A judgment that fails to accord to a party his legal rights is, of course, always to be regretted. But there must be a point in every proceeding beyond which the law will not permit further controversy as to the merits of the case. In actions of the character of the one under consideration, where the amount claimed is less than three hundred dollars, the final appellate jurisdiction is in the superior court. Even if the judgment of that court on the merits was clearly erroneous in this case, a question we do not decide, it is final and conclusive, no excess of jurisdiction being made to appear.

The judgment of the superior court is affirmed.

Shaw, J., Henshaw, J., Lorigan, J., and Melvin, J., concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing, and filed the following opinion thereon on April 4, 1912:—

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause and from the doctrine of the decision.

The point decided is that the action was one within the juris-
diction of the justices' court, and therefore, of course within
the final appellate jurisdiction of the superior court, and the
judgment though erroneous and subversive of the rights of the
petitioner secured to him by his appeal to this court entirely
irremediable.   It is, in short, a confession of impotence on the
part of this court to secure to an appealing litigant the fruits
of a successful appeal.   The argument in support of this con-
clusion seems to be that no matter how clearly and conclu-
sively it may be made to appear, as matter of fact, *and by
way of defense,* that the action commenced in a justice's court
will if it prevails, defeat the rights of the defendant involved
in his pending appeal to the supreme court from the judgment
of the superior court—the justice of the peace nevertheless
has *jurisdiction* to render such a judgment, and the superior
court to affirm it, and thus accomplish indirectly what the
superior court could not do by a direct proceeding (as by the
issuance of execution) after the filing of a sufficient undertak-
ing to stay proceedings.   For here the opinion of the court
concedes—and the fact is—that in the case of Gjurich *v.* Fieg
a sufficient undertaking to stay proceedings pending the ap-
peal had been filed before the action against the petitioners
(Gjurich's sureties) had been commenced.

The instance with which this case is compared by way of
support of the argument is the disregard of a plea of another
action pending in another court.   But this is a plea which may
be disregarded without an excess of jurisdiction where the
other action is not pending in a superior court of exclusive
jurisdiction.   When a cause is on appeal to this court even
the superior court is without jurisdiction to decide any ques-
tion directly or indirectly involved in the appeal, and if there
is a stay of proceedings it can enforce no part of its judgment.
Can a justice of the peace do what the superior court cannot
do and his action be made final and conclusive by the endorse-
ment of the superior court?   If it can it is a result not con-
templated by the framers of our constitution when they ex-
pressly provided that the powers of justices of the peace
should "not in any case trench upon the jurisdiction of the
several courts of record except that said justices shall have
concurrent jurisdiction *with the superior courts* in" certain
cases of forcible entry and detainer and to enforce certain

liens on personal property. (Constitution, art. VI, sec. 11.)
The supreme court is a court of record—by reason of Gjurich's
appeal it acquired exclusive jurisdiction of every question in
that case, including the right of the defendant to enforce the
judgment for costs. But it seems that a justice of the peace
can forestall our judgment upon that question, and that his
judgment affirmed by the superior court, though confessedly
erroneous, is remediless, because it is no excess of jurisdiction
for a justice of the peace to enforce a part of a judgment less
in amount than three hundred dollars, while the validity of
that judgment is a question pending in this court. I prefer,
however, the opposite conclusion of the district court of appeal.

The following is the opinion of the district court of appeal
of the third appellate district, rendered on August 30, 1911,
referred to and the conclusions of which were approved in the
dissenting opinion of Beatty, C. J.:—

BURNETT, J.—This is a proceeding in *certiorari* and
grows out of the following situation: On April 22, 1909, in
the superior court of the county of San Joaquin, an action was
brought by E. Gjurich, one of the petitioners herein, against
one Fanny Fieg to recover the sum of five thousand dollars
for alleged services. Thereupon a writ of attachment was
issued and levied upon certain real and personal property of
the defendant in the action. The undertaking for said attach-
ment was executed by A. T. Karry and Herman Wendel,
petitioners herein, and provided that they "do jointly and
severally undertake in the sum of four hundred dollars, and
promise to the effect, that if the defendant recover judgment
in said action, the said plaintiff will pay all costs that may be
awarded to the defendant and all damages which he may
sustain by reason of said attachment, not exceeding the sum
of four hundred dollars." The action was tried and, on June
10, 1910, judgment rendered in favor of the defendant Fieg
for costs in the sum of $145.71; on June 14th, following,
notice of appeal from said judgment was given and on the
same day said Gjurich filed his undertaking on appeal with
the clerk of the court. For the purpose of continuing in force
the said attachment during the pendency of said appeal, the

said Gjurich, on June 15, 1910, filed an undertaking in due form, according to the provisions of section 946 of the Code of Civil Procedure, in the sum of ten thousand dollars, being double the amount of the debt claimed by said Gjurich, to secure the payment to said Fieg of all costs and damages which she might sustain by reason of said attachment. On the first day of July, 1910, while the aforesaid action was pending on appeal in the supreme court, the said Fieg brought an action in the justice court of O'Neal Township, in said county, against petitioners herein, to recover said costs and damages claimed by reason of said attachment. The defendants appeared and pleaded in abatement the pendency of said appeal in the supreme court and the giving of said undertaking to continue the attachment in force. The justice court awarded judgment to the plaintiff therein as prayed for. The defendants thereupon appealed to the superior court of said county and, after a trial before Hon. J. A. Plummer, judgment was rendered in favor of said plaintiff, Fieg, and against the said defendants, the petitioners herein, for $145.71, the amount of the judgment recovered in the first mentioned action. As a return to the order to show cause issued by this court, a demurrer was filed and also a certified copy of the proceedings in the court below, sufficiently ample for the purposes of this decision. For convenience of reference, we shall hereafter designate the original action brought by Gjurich against Fieg as number one and the action brought by Fieg against petitioners here to recover her costs and damages as number two.

The first question in order of sequence is, seemingly, what was the effect upon the judgment of the appeal in action number one? As to this, in view of the provisions of the statute and the decisions of the appellate courts, there can be, apparently, no kind of doubt. Section 946 of the Code of Civil Procedure provides that "Whenever an appeal is perfected as provided in the preceding sections of this chapter, it stays all further proceedings in the court below upon the judgment or order appealed from, or upon the matters embraced therein . . . but the court below may proceed upon any other matter embraced in the action and not affected by the order appealed from. . . . An appeal does not continue in force an attachment unless an undertaking be executed and filed on the part

of the appellant by at least two sureties, in double the amount of the debt claimed by him, that the appellant will pay all costs and damages which the respondent may sustain by reason of the attachment, in case the order of the court below be sustained; and unless, within five days after the entry of the order appealed from such appeal be perfected." Section 949 of the same code is, as far as it goes, to the same effect and is as follows: "In cases not provided for in sections nine hundred and forty-two, nine hundred and forty-three, nine hundred and forty-four, and nine hundred and forty-five, the perfection of an appeal by giving the undertaking or making the deposit mentioned in section nine hundred and forty-one, stays all proceedings in the court below upon any judgment or order appealed from, except where it directs the sale of perishable property." It is not disputed that the appeal here was perfected as required by the statute.

If we are to give effect to the simple, unequivocal terms of the law, unless we have a case within some of the exceptions mentioned, it necessarily follows that no step could be taken legally to enforce or carry into execution or to impair or modify in any respect said judgment during the pendency of said appeal. It is apparent, indeed, from an examination of the foregoing provisions relating to the exceptions, that they have no application to the case at bar. In fact, there can be and is no pretense that any of them is germane to the question before us except possibly said section 942 of the Code of Civil Procedure, which provides that "If the appeal be from a judgment or order directing the payment of money, it does not stay the execution of the judgment or order unless a written undertaking be executed on the part of the appellant by two or more sureties, to the effect that they are bound in double the amount named in the judgment or order," etc. But a judgment for costs is not a judgment directing the payment of money in the sense of the statute. The judgment under review was essentially that plaintiff take nothing and, as an incident thereto, that defendant be allowed her costs.

If additional assurance of the foregoing be sought, we may find it in the decisions at hand.

In *Snow* v. *Holmes*, 64 Cal. 232, [30 Pac. 806], it was held that, on appeal from a judgment of foreclosure of a mortgage upon personal property, the undertaking in the sum of three

hundred dollars is sufficient to stay the execution of a judgment pending the appeal.

*In re Schedel*, 69 Cal. 241, [10 Pac. 334], involved the effect of an appeal from a decree of distribution and the general rule was held to apply and it was declared that "sections 942 to 945, inclusive, apply to appellants who are required to perform the directions of the judgment or order appealed from. This is manifest from their language."

In *Pennie* v. *Superior Court*, 89 Cal. 31, [26 Pac. 617], it was held that, on appeal from an order requiring the administrator to pay a family allowance to a certain claimant, an undertaking in the sum of three hudred dollars stayed all proceedings and that an order made after said appeal directing the administrator to make the payment is beyond the jurisdiction of the superior court and should be annulled upon *certiorari*.

So, in *Powers* v. *Chabot*, 93 Cal. 266, [28 Pac. 1070], it was held that, since no bond is required to stay execution in addition to the usual bond for costs on appeal from a judgment foreclosing a chattel mortgage, a bond given upon such appeal, to secure a judgment for deficiency, is not a statutory bond and is without consideration and void.

In *McCallion* v. *Hibernia, etc., Society*, 98 Cal. 445, [33 Pac. 329], it is said: "As to that portion of the judgment awarding costs against appellants, a stay-bond was not required to restrain the issuance of an execution to recover such costs. The appeal-bond effected that object. The real judgment in the case is that plaintiffs are the owners of the money, and no stay-bond being required by the statute as to such a judgment, no stay-bond is demanded as to the costs. The costs taxed against the defendant were incidental to the judgment, and as to a stay of execution, inseparably connected therewith. A judgment for costs is not the judgment directing the payment of money contemplated by section 942. If such were the fact, a stay-bond would be required in almost every conceivable case, when to the contrary, it is only required in the four cases covered by sections 942 to 945 of the code."

It must be apparent that even the exceptions provided for in the code present a somewhat anomalous situation. It seems rather peculiar that an execution based upon and presuppos-

ing a judgment should be permitted before there really is a judgment in the proper sense of the term. "A judgment is the final determination of the rights of the parties in an action or proceeding" (Code Civ. Proc., sec. 577) and "until litigation on the merits is ended, there is no finality to the judgment, in the sense of a final determination of the rights of the parties, although it may have become final for the purpose of an appeal from it." *Gillmore* v. *American C. I. Co.*, 65 Cal. 63, [2 Pac. 882]. In the exceptional cases referred to, however, the "judgment" signifies the determination by the trial court of the rights of the parties, but those cases should not, obviously, be enlarged beyond the terms of the statute.

The next inquiry is, What was the basis for the complaint or the cause of action in number two upon which plaintiff relied for recovery? It is contended by respondent that the action was brought upon the undertaking in attachment and that the suit was not brought on the judgment in action number one. In a sense it must be true that said undertaking is the basis for the action. The undertaking constituted a contract for the payment of money under certain conditions. But it is as clear as anything can be that the obligation imposed upon the sureties on that undertaking was a conditional one, contingent upon the happening or existence of certain facts. The sureties bound themselves to pay only "if the defendant recover judgment in said action." Said recovery of judgment in number one was and is, therefore, an essential element in the cause of action in number two. The recovery of judgment was the circumstance agreed upon to fix the liability of the sureties and make it absolute instead of conditional. "A suit on a bond cannot be commenced before there is any breach of the bond." *Cook* v. *Ceas*, 143 Cal. 226, [77 Pac. 65]. While it may not be said, probably, that the recovery of judgment in action number one is the sole cause of action in number two, it must be conceded that no cause of action could have been stated without an averment that said judgment had been recovered, and the said action could not be maintained without proving that judgment was rendered for defendant in action number one. But there is no principle better established than that sureties may stand upon the strict letter of their undertaking and its terms must be strictly construed in their favor. Indeed, since it is a statutory bond, it is reason-

able to hold that the terms used therein which are defined by the statute were used in such statutory sense. Therefore the action against the sureties was premature for the reason that no judgment has as yet been rendered in action number one, the action being still pending on appeal and the "judgment" referred to meaning the final determination of the rights of the parties.

But, again, the sureties promised to pay "all costs that may be awarded to the defendant and all damages which he may sustain by reason of said attachment." What does the term "costs" comprehend? Considered in connection with the preceding clause in reference to the recovery of judgment, it can simply mean that the sureties will pay all costs that may be awarded to the defendant therein by the judgment in action number one—in other words, whatever judgment for costs that may be rendered. By said judgment, therefore, if rendered, is the fact of their liability fixed and the extent of their liability determined. Thus it is clearly disclosed that the judgment in action number one is the basis for action number two. But it is settled beyond controversy that "an action will not lie upon a judgment until it has become final." *Feeney* v. *Hinckley,* 134 Cal. 468, [66 Pac. 580] : "Until that time has arrived, no cause of action upon the judgment has accrued." *Hills* v. *Sherwood,* 33 Cal. 474. In *Cook* v. *Ceas,* 143 Cal. 226, [77 Pac. 65], it is said: "It has been held here in a great number and great variety of cases that so long as an action or proceeding is pending in this sense the judgment or order from which an appeal has been or may be taken cannot be made the basis of any new action."

There is only one other possible application of the term "costs" as used in said undertaking and that is to refer it to the expense that may be incurred by reason of the attachment. But, under said construction, it is apparent that no ground for the action exists, since the attachment is still in force by virtue of the said ten-thousand-dollar-bond. There could be no breach of the undertaking to pay the costs and damages caused by the levy of the writ of attachment while the property is still lawfully subject to said writ. We presume this will not be disputed.

The result of the foregoing discussion, as we conceive it, is that the trial court awarded judgment upon a cause of action

that had not arisen and that may never arise by reason of the disposition hereafter of said appeal to the supreme court. It may be stated also that if respondents should be upheld petitioners will be required to pay the money, although it may be subsequently determined that defendant in action number one is not entitled to judgment for costs. Whereas, if the action of the court below is annulled, plaintiff in number two is abundantly protected by the said ten-thousand-dollar-bond.

No doubt this was given consideration by the learned trial judge but it appears from his opinion that he felt constrained by the decision in *Bailey* v. *Aetna Indemnity Co.*, 5 Cal. App. 740, [91 Pac. 416]. In our opinion, however, that case is easily distinguishable from this; there an action was brought and a writ of attachment was levied upon property belonging to the defendant. A bond was thereupon given by defendant for the release of said property and it was accordingly relieved from the lien of said levy. Judgment was obtained by plaintiff in the action and there was *no stay of execution.* A writ of execution was thereupon issued and *returned unsatisfied.* The very conditions existed, therefore, which were necessary to fix the liability of the sureties on the bond given to release the attachment, and a judgment against them was properly upheld. This is made clear by reference to sections 552, 554, and 555 of the Code of Civil Procedure. The last two provide for the release of the attachment upon the giving of an undertaking and they prescribe the terms of said undertaking; and section 552 provides that "If the execution be returned unsatisfied, in whole or in part, the plaintiff may prosecute any undertaking given pursuant to section *five hundred and forty* or section *five hundred and fifty-five,* or he may proceed, as in other cases, upon the return of an execution." Here, as we have seen, no execution on the original judgment was issued or could be legally, and the liability of the sureties is contingent and not absolute.

The remaining question is as to the remedy. Herein it is claimed that at most a mere error was committed not in excess of jurisdiction and that it cannot be reached by *certiorari.*

We deem it unnecessary to discuss the function and scope of this writ, as the subject has received ample consideration from various courts. Reference may profitably be had to the following decisions, among others, of our supreme court:

*Monreal* v. *County Judge,* 46 Cal. 79; *Reynolds* v. *County Court of San Joaquin,* 47 Cal. 604; *In re Schedel,* 69 Cal. 241, [10 Pac. 334] ; *Pennie* v. *Superior Court,* 89 Cal. 31, [26 Pac. 617] ; *Buckley* v. *Superior Court,* 96 Cal. 119, [31 Pac. 8] ; *Stewart* v. *Superior Court,* 100 Cal. 543, [35 Pac. 156] ; *Holbrook* v. *Superior Court,* 106 Cal. 589, [39 Pac. 936] ; *Schwartz* v. *Superior Court,* 111 Cal. 106, [43 Pac. 580] ; *McClatchy* v. *Superior Court,* 119 Cal. 413, [39 L. R. A. 691, 51 Pac. 696] ; *Daly* v. *Ruddell,* 129 Cal. 300, [61 Pac. 1080] ; *Stumpf* v. *Board of Supervisors,* 131 Cal. 364, [82 Am. St. Rep. 350, 63 Pac. 663].

It may be said as to these cases that they are substantially consistent in their exposition of the nature of the writ and of the legal principles involved in its operation, but in the application of those principles to the diverse facts of the various cases we find quite a contrariety of opinion. This is not surprising, since it is manifestly a question of great difficulty, at times, to determine whether an error is jurisdictional or not and what facts are essential to clothe the court with legal authority to proceed with the trial of an action.

It is confidently asserted, though, that if the situation here is understood, authority for the issuance of the writ will not be hard to find and such authority will be recognized as consonant with well-established principles of law.

To reiterate somewhat, the case is essentially this: A judgment was rendered in a certain action. An appeal was taken which, *ipso facto,* stayed all proceedings upon that judgment. Nevertheless, another action was brought, based upon said judgment and which constituted in effect an attempt to make said judgment operative and to carry it into execution. The prosecution of this proceeding was permitted by the trial court. It would be no different in principle if the court had allowed an execution to be issued and levied to satisfy said judgment. Since all proceedings upon said judgment looking towards its enforcement were and are stayed by the plain provisions of the statute, no court has any legal authority— in other words, any jurisdiction—to entertain a proceeding to appropriate the fruits of the litigation while that litigation is still pending and undetermined.

*In re Schedel,* 69 Cal. 241, [10 Pac. 334], decided that a writ of *supersedeas* should issue to stay proceedings on a

decree of distribution of the estate of a deceased testator pending an appeal therefrom by a legatee. The writ of *supersedeas* is "an auxiliary process designed to supersede the enforcement of the judgment of the court below brought up by a writ of error for review." (*Williams* v. *Bruffy,* 102 U. S. 249, [26 L. Ed. 135].) It is issued because of the want of jurisdiction to enforce the judgment. It stays a threatened step towards execution. The effect is the same as the annulment by *certiorari* of steps that have already been taken for the enforcement of a judgment whose operation has been suspended.

In *Pennie* v. *Superior Court,* as we have already seen, the order directing the payment of the family allowancce was annulled on *certiorari.*

*Stewart* v. *Superior Court* involved the application for a writ of review to annul an order of the court below adjudging petitioner guilty of contempt for the disobedience of its judgment. It was held that the appeal in the original action operated as a *supersedeas* against the judgment and that since said petitioners did nothing except to restore the property to the condition that existed at the time said judgment was rendered, there was no contempt on their part and the order adjudging them guilty was annulled on *certiorari.*

So, in *Daly* v. *Ruddell,* 129 Cal. 300, [61 Pac. 1080], it was held that a *supersedeas* would issue to restrain the lower court from taking any action to enforce a judgment in reference to the laying of a pipe-line where there was an appeal from said judgment pending in the supreme court.

We think it reasonably certain, upon principle and under the foregoing and other authorities, that this is a proper case for *certiorari* and the demurrer is overruled and the judgment of the lower court is set aside and annulled.

Hart, J., and Chipman, P. J., concurred.