ADAMS v. DECOTO et al.

District Court, S. D. California, S. D.
August 1, 1927.

Public service commissions ⬅⮞21—Federal court will not enjoin enforcement of order of California Railroad Commission, validity of which has been sustained by state Supreme Court (Public Utilities Act Cal. §§ 1, 2, 28a, 30, 32 [b], 75).

Denial by the Supreme Court of California of a petition to review an order or decision of the state Railroad Commission, under Public Utilities Act Cal. (St. 1915, p. 115), §§ 1, 2, 28a, 30, 32 (b), 75, in the absence of proceedings for further review by the Supreme Court of the United States, is a final adjudication of the validity of such order or decision, and its enforcement will not be enjoined by a federal District Court.

In Equity. Suit by B. G. Adams against Ezra W. Decoto and others, constituting the Railroad Commission of the State of California. On motions by defendants to dissolve temporary restraining order and to dismiss bill. Motions granted.

Lee R. Taylor, of Los Angeles, Cal., for plaintiff.

Carl I. Wheat, of San Francisco, Cal., Arthur T. George, of Los Angeles, Cal., and Reginald L. Vaughan, of San Francisco, Cal., for defendants.

Before ROSS, Circuit Judge, and JAMES and HENNING, District Judges.

ROSS, Circuit Judge. The present is a motion to dissolve a temporary restraining order and to dismiss the bill of complaint filed in this court by the plaintiff, Adams, against the defendants, Decoto and his associates, constituting the Railroad Commission of the state of California.

The record shows that the plaintiff, Adams, was at the time referred to in the bill the owner and operator of a public utility domestic water system located in the city of Los

Angeles, and has been such owner and operator at all times since on or about March 22, 1924, operating the same under the fictitious name of "Vermont Water Company"; that the defendant Railroad Commission of California on September 4, 1926, instituted an investigation into the reasonableness of the rates, charges, practices, contracts, rules- and regulations, and schedules and conditions of service of such operation by the plaintiff; that the order instituting the investigation was served upon Adams on or about September 20, 1926, which proceeding so instituted was designated by the commission as its case No. 2276; that a public hearing regarding the matter was held in the city of Los Angeles November 3, 1926; and that on the 23d day of December, 1926, a decision numbered "Decision No. 17796" was rendered therein by the defendant Railroad Commission, which decision is in the following form:

"Decision No. 17796.

"Before the Railroad Commission of the State of California.

"In the Matter of the Investigation on the Commission's Own Motion of the Reasonableness of the Rates, Charges, Practices, Contracts, Rules, Regulations, Schedules and Conditions of Service, or any of them, of B. G. Adams, Operating under the Fictitious Name of Vermont Water Company in Tracts Nos. 2273 and 4754, Figueroa Heights, Woolocott Heights, and Vermont Villa Tract, Los Angeles county, California.   Case No. 2276.   •

"Clarence Weber, for B. G. Adams.

"Opinion.

"Whitsell, Commissioner.   This proceeding was begun by the commission by an order on its own motion instituting an investigation into the reasonableness of the rates, charges, practices, contracts, rules, regulations, etc., of B. G. Adams, operating under the fictitious name of the Vermont Water Company in tracts 2273 and 4754, Figueroa Heights, Woolocott Heights, and Vermont Villa tracts, Los Angeles county, California.   The order instituting investigation was issued under date of September 4, 1926.   A public hearing on the matter was held in the city of Los Angeles on November 3, 1926, at which time evidence, both oral and documentary, was taken. B. G. Adams was present at the hearing with his attorney, Clarence Weber.

"The record in this proceeding shows that B. G. Adams, under the fictitious name of the

Vermont Water Company, is operating a public utility domestic water system in the city of Los Angeles, in the vicinity of 110th and Hoover streets, and that he has been operating such system continuously since March 23, 1925.   At the present time some 195 consumers are being served.   It appears that the system is being operated pursuant to the authority granted by this commission by its decision 13305, dated March 22, 1924, which decision was rendered in the matter of application 9650.   By this application B. G. Adams sought a certificate of public convenience and necessity as required by law for the operation of his system, and described in detail territory which he proposed to serve, the type of plant constructed, and the rate proposed to be charged.   Subsequent to the granting of the certificate of public convenience and necessity by decision 13,305, B. G. Adams, under date of March 23, 1925, filed with this commission his rates, rules, and regulations covering his operations.   It appears that the said rates, rules, and regulations so filed are still in force and effect, and that no authority has been granted by this commission for their modification.   Rule 19 of the said rules and regulations provides as follows:

" 'Rule and Regulation.

" 'No. 19—Extension of Water Service, Cost, and Ownership on Private Property.

" 'Upon application by a bona fide applicant for service, the company will, at its own expense, furnish and install service pipe of suitable capacity from its water mains to the curb line or property line of property abutting upon a public street, highway, alley, lane, or road along which it already has or will install street mains.   The consumer will install that portion of the service inside of curb or property line, the expense of same to be paid by the consumer.

" 'The materials furnished by consumer in construction of such service extension will at all times be and remain the sole property of the consumer, and when necessary shall be maintained and repaired by consumer at his own expense.   The company will not be required to install more than one service to any one consumer.'

"The testimony in this matter shows that the above-quoted rule 19, since its establishment, has been violated by the operator, B. G. Adams, in 89 instances.   It appears to have been the practice of Mr. Adams to exact a 'tap fee' of $15 from a prospective consumer before a physical connection would be made from the street water main of the system to the abutting curb line or property line

of the consumer. Every such fee so exacted clearly was in violation of rule 19, inasmuch as under said rule it was incumbent upon the operator, at his own expense, to furnish and install such necessary pipe and connections. In my opinion, Mr. B. G. Adams should be required to refund all 'tap fees' which he has collected since March 23, 1925, the date upon which he filed with the commission his rates, rules, and regulations, and the date upon which his operations unquestionably acquired the status of a public utility.

"Apparently by way of justification for his practice of charging a 'tap fee,' Mr. Adams testified that the city of Los Angeles, in the operation of its municipal water system in and around the territory in which he operates, has been charging its new consumers such a fee for a like service. The city of Los Angeles, in the operation of its water system, of course, is not subject to the jurisdiction of this commission, and therefore does not operate under rules and regulations on file with this commission, as does Mr. Adams. The practice of the city in this matter could in no way justify this operator in the violation of his rule 19.

"It is well recognized by this commission that the requirements found in rule 19 are reasonable. Practically all of the domestic water companies of this state, subject to the jurisdiction of this commission, have established and filed with this commission a rule in substance the same as rule 19 of the Vermont Water Company. The reasonableness of such rule was carefully reviewed in an early decision of this commission, wherein it established certain uniform rules and regulations to be observed by water companies and other designated public utilities. 7 Railroad Commission Reports, 830, 851.

"The following form of order is recommended:

"Order.

"The Railroad Commission of the state of California having instituted an investigation upon its own motion into the reasonableness of rates, services, rules, regulations, and practices of B. G. Adams, operating under the fictitious name of the Vermont Water Company, in tracts 2273 and other designated tracts in Los Angeles county, California, a public hearing having been held thereon, the matter having been submitted, and it being the opinion of this commission that the service here in question is a public utility service subject to its jurisdiction and control:

"It is hereby found as a fact that the said B. G. Adams, in the operation of his said public utility water system, has violated rule 19 of his rules and regulations on file with this commission, in the manner outlined in the foregoing opinion.

"It is hereby further found as a fact that the said B. G. Adams has violated said rule 19 in the said manner in 89 instances since the establishment of said rule on March 23, 1925.

"And basing its order on the foregoing findings of fact, and on the further statements of fact contained in the opinion which precedes this order:

"It is hereby ordered that B. G. Adams refund to all consumers having paid the same all 'tap fees' collected since the establishment of his rule 19 on March 23, 1925; that such sums be refunded within 30 days from the effective date of this order; that within 40 days from the effective date of this order, said B. G. Adams file with this commission a statement showing the names and addresses of persons to whom such 'tap fees' have been returned, the respective amounts returned, and the dates upon which such sums were returned. The effective date of this order shall be 20 days from date hereof.

"The foregoing opinion and order are hereby approved and ordered filed as the opinion and order of the Railroad Commission of the state of California.

"Dated at San Francisco, California, this 23d day of December, 1926.

"H. W. Brundige,
"C. L. Seavey,
"Ezra W. Decoto,
"Leon O. Whitsell,
"Thos. S. Louttit,
Commissioners."

The record further shows that the said decision and the order therein contained has never been revoked, altered, or suspended, and is now in full force and effect; that a copy thereof was duly served on the plaintiff, Adams, on or about December 23, 1926, who on January 11, 1927, filed with the commission a petition for rehearing of its decision, which petition was denied by the commission January 17, 1927, a copy of which was served upon the plaintiff, Adams, on or about January 18, 1927; that on February 14, 1927, Adams filed with the clerk of the Supreme Court of the state of California a petition for a writ of certiorari, directed to the California Railroad Commission, for the review of its said decision No. 17796 and the order therein made, which petition was denied by the Supreme Court of the state February 28, 1927; that on May 10, 1927, the hydraulic engineer

of the commission filed with its secretary an affidavit, designated "Application for Order to Show Cause and Affidavit of Service," wherein it was alleged that the said Adams had failed and refused to comply with the order contained in the said Railroad Commission decision No. 17796, and continued such refusal with the intention of violating the commission's order, and praying the issuance of an order by the commission on Adams to show cause and to designate the time and place why he should not be punished in the manner provided by law for his contempt of the commission and its said order; that thereupon, and upon May 10, 1927, the said commission made the following order, which was on the next day personally served on the said Adams, together with a copy of the affidavit of the hydraulic engineer referred to:

"On reading the affidavit of M. R. Mac-Kall filed herein on the 10th day of May, 1927.

"It is hereby ordered that said B. G. Adams appear before Commissioner Whitsell at the courtroom of the Railroad Commission of the state of California, 810 Sun Finance Building, Los Angeles, California, on Wednesday, May 18, 1927, at 11 o'clock a. m., and then and there show cause, if any he has, why he should not be punished for contempt for disobedience of the order of this commission as set forth in said affidavit.

"It is hereby further ordered that a true copy of said affidavit, together with a copy of this order, be served upon said B. G. Adams at least five (5) days before the time herein fixed for the hearing.

"Dated at San Francisco, California, this 10th day of May, 1927.

"C. L. Seavey,
"Leon O. Whitsell,
"Thos. S. Louttit,
"Commissioners."

That the hearing on said order to show cause was duly and regularly called before Commissioner Whitsell at the time and place set forth in the said order to show cause, at which time the said Adams appeared with his attorney and presented the temporary restraining order made by Hon. William P. James, United States District Judge for this district, enjoining any further proceeding in the matter then pending before the Railroad Commission in case No. 2276 until "hearing is had on the order to show cause why a temporary injunction should not be issued, which order shall be returnable May 27, 1927, at 10 o'clock a. m.," whereupon the hearing before the Railroad Commission was adjourned by Commissioner Whitsell pending the hearing on said order to show cause in the federal District Court.

The existing Public Utilities Act of California, approved April 23, 1915 (St. 1915, p. 115), is entitled: "An act to provide for the organization of the Railroad Commission, to define its powers and duties and the rights, remedies, powers and duties of public utilities and their officers, and the rights and remedies of patrons of public utilities, and to provide penalties for offenses by public utilities, their officers, agents and employees and by other persons and corporations, creating the 'Railroad Commission fund' and appropriating the moneys therein to carry out the provisions of this act, and repealing title XV of part IV of division first of the Civil Code and all acts and parts of acts inconsistent with the provisions of this act."

The first section and a part of the second section of the above act are as follows:

"Section 1. This act shall be known as the 'public utilities act' and shall apply to the public utilities and public services herein described and to the commission herein referred to.

"Sec. 2. (a) The term 'commission,' when used in this act, means the Railroad Commission of the state of California.

"(b) The term 'commissioner,' when used in this act, means one of the members of the commission.

"(c) The term 'corporation,' when used in this act, includes a corporation, a company, an association and a joint-stock association.

"(d) The term 'person,' when used in this act, includes an individual, a firm and a co-partnership. * * *"

Section 28 (a) declares: "Every public utility shall furnish to the commission in such form and such detail as the commission shall prescribe all tabulations, computations and all other information required by it to carry into effect any of the provisions of this act, and shall make specific answers to all questions submitted by the commission."

By section 30 it is provided: "Every public utility shall obey and comply with each and every requirement of every order, decision, direction, rule or regulation made or prescribed by the commission in the matters herein specified, or any other matter in any way relating to or affecting its business as a public utility, and shall do everything necessary or proper in order to secure compliance with and observance of every such order, decision, direction, rule or regulation by all of its officers, agents and employees."

By section 32 (b) it is provided: "The commission shall have power, upon a hearing, had upon its own motion or upon complaint, to investigate a single rate, fare, toll, rental, charge, classification, rule, regulation, contract or practice, or any number thereof, or the entire schedule or schedules of rates, fares, tolls, rentals, charges, classifications, rules, regulations, contracts and practices, or any thereof, of any public utility, and to establish new rates, fares, tolls, rentals, charges, classifications, rules, regulations, contracts or practices, or schedule or schedules, in lieu thereof."

Section 75 is as follows: "Whenever the commission shall be of the opinion that any public utility is failing or omitting or about to fail or omit, to do anything required of it by law, or by any order, decision, rule, direction or requirement of the commission, or is doing anything or about to do anything, or permitting anything or about to permit anything to be done, contrary to or in violation of law or of any order, decision, rule, direction or requirement of the commission, it shall direct the attorney of the commission to commence an action or proceeding in the superior court in and for the county, or city and county, in which the cause or some part thereof arose, or in which the corporation complained of, if any, has its principal place of business, or in which the person, if any, complained of, resides, in the name of the people of the state of California, for the purpose of having such violations or threatened violations stopped and prevented, either by mandamus or injunction. The attorney of the commission shall thereupon begin such action or proceeding by petition to such superior court, alleging the violation or threatened violation complained of, and praying for appropriate relief by way of mandamus or injunction. It shall thereupon be the duty of the court to specify a time, not exceeding twenty days after the service of the copy of the petition, within which the public utility complained of must answer the petition, and in the meantime said public utility may be restrained. In case of default in answer, or after answer, the court shall immediately inquire into the facts and circumstances of the case. Such corporations or persons as the court may deem necessary or proper to be joined as parties, in order to make its judgment, order or writ effective, may be joined as parties. The final judgment in any such action or proceeding shall either dismiss the action or proceeding or direct that the writ of mandamus or injunction issue or be made permanent as prayed for in the petition, or in such modified or other form as will afford appropriate relief. An appeal may be taken to the Supreme Court from such final judgment in the same manner and with the same effect, subject to the provisions of this act, as appeals are taken from judgments of the superior court in other actions for mandamus or injunction."

It appears from the record that the Railroad Commission, under and in pursuance of the provisions of the Public Utilities Act of the state, in proceedings duly taken for the purpose, found and decided, after due notice and hearing, that Adams in the operation of his public utility water system had violated one of the rules governing the system, in that he charged and received from various of the users thereof (89 in number) $15 each for connecting their pipes therewith, and thereupon made and entered an order that such sums so illegally charged and collected be forthwith returned by him. Adams, denying the validity of such order, petitioned the commission for a rehearing of the matter, which petition being denied, he applied to the Supreme Court of the state of California for a review of and the vacation of the order of the commission, which application the court denied February 28, 1927.

In the case of Napa Valley Electric Co. v. Railroad Commission of California et al., 251 U. S. 366, 40 S. Ct. 174, 64 L. Ed. 310, the Supreme Court of the United States held that, under section 67 of the Public Utilities Act of California, as construed by the Supreme Court of the state, a petition to that court for a writ of review to bring up proceedings of the Board of Railroad Commissioners, in which rates for electric power were fixed in alleged violation of constitutional rights and excess of the board's jurisdiction may be disposed of upon the merits by an order simply refusing the writ, if the facts are fully stated in the petition; the provisions for issuing such writ and for subsequent decision upon the record from the board not being mandatory in such cases.

The Supreme Court there also further held that, in a suit brought in the United States District Court to enjoin enforcement of rates fixed by such board, it will be presumed that a petition, not in the record, upon which the state Supreme Court refused a writ of review, exhibited the board's proceedings and presented the questions which that court was empowered to decide, viz. whether the board pursued its authority and whether any constitutional right, state or federal, was violated, and that the order refusing the writ will be deemed conclusive of such questions,

although not accompanied by an opinion of the state court.

The plaintiff, Adams, if he was not satisfied with the decision of the Supreme Court of California, could, had he elected to do so, have taken his case to the Supreme Court of the United States for adjudication, for that court expressly held, in the case of Williams v. Bruffy, 102 U. S. 248, at page 255, 26 L. Ed. 135, that "whenever the highest court of a state by any form of decision affirms or denies the validity of a judgment of an inferior court, over which it by law can exercise appellate authority, the jurisdiction of this court to review such decision, if it involve a federal question, will, upon a proper proceeding, attach. It cannot make any difference whether, after an examination of the record of the court below, such decision be expressed by refusing a writ of error or supersedeas, or by dismissing a writ previously allowed. And when this court has once acquired jurisdiction, it may send its process, in the enforcement of its judgment, to the appellate court of the state, or to the inferior court whose judgment is reversed."

We therefore think that the case as presented to us stands res judicata, and it is not for this or any other federal court to anticipate what punishment the state Railroad Commission will impose for the contempt of its order committed by the plaintiff, Adams. On the contrary, the presumption clearly is that whatever punishment is so imposed will be in accordance with the provisions both of the laws and of the Constitution of the state of California.

Both pending motions are therefore granted, and an order to that effect will be entered.