## HILL v. MARTIN, STATE TAX COMMISSIONER, ET AL.*

No. 193. Argued November 11, 12, 1935.—Decided December 16, 1935.

---

* Together with No. 194, *Dorrance et al.* v. *Martin, State Tax Commissioner, et al.* Appeal from the District Court of the United States for the District of New Jersey.

*Mr. William A. Schnader* for appellants.

*Mr. Duane E. Minard,* with whom *Mr. David T. Wilentz,* Attorney General of New Jersey, and *Mr. George S. Hobart,* were on the brief, for appellees.

MR. JUSTICE BRANDEIS delivered thé opinion of the Court.

These suits were brought, on April 1, 1935, under § 266 of the Judicial Code, to enjoin the collection of an inheritance tax in the sum of $12,247,333.52, assessed by New Jersey upon the estate of John T. Dorrance, which was valued at more than $115,000,000. The bills charge that its transfer inheritance tax act, as construed and applied, violates the full faith and credit clause of the Federal Constitution and the due process clause of the Fourteenth Amendment. The defendants are the State Tax Commissioner and other New Jersey officials.[1] In No. 193, the plaintiff is a daughter of the decedent and a beneficiary under his will. In No. 194, his executors are the plaintiffs. A temporary restraining order issued. An appli-

---

[1] These are the State Supervisor of the Inheritance Tax Bureau, the Comptroller of the State, the State Treasurer, and the Attorney General.

cation was made for an interlocutory injunction; answers were filed; and the case was heard before three judges upon an elaborate record. But the injunction was denied for want of jurisdiction upon the allegations of the bill, because of the prohibition contained in § 265 of the Judicial Code.[2] The cases are here on appeal.

The material allegations are substantially the same in the two suits: Dorrance died on September 21, 1930, at his residence in Cinnaminson, Burlington County, New Jersey, leaving a will in which he named his wife, two brothers, and the Camden Trust Company executors. On October 2, 1930, his will was, upon petition of the executors, admitted to probate in the Orphan's Court of that county; letters testamentary issued; and the executors have administered the estate ever since under the jurisdiction of that court. Their petition for probate, like the will, had recited that Dorrance's domicil was in New Jersey. On April 6, 1931, they filed with the Inheritance Tax Bureau of New Jersey their return as a basis for the assessment of the inheritance tax. The estate consisted almost wholly of bonds, stocks, and other evidence of title to intangible personal property; and these were then, and still are, located in New Jersey. On October 17, 1931, the Tax Commissioner, finding, upon evidence presented by the executors, that Dorrance was at the time of his death domiciled in New Jersey, assessed the amount stated as the tax on direct transfers payable under the New Jersey Transfer Inheritance Tax Act of April 20, 1909, ch. 228, as amended.

On December 12, 1931, the assessment so made was, upon request of the executors, opened for the purpose of

[2] Section 265 provides: " The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." See *Smith* v. *Apple,* 264 U. S. 274.

enabling them to submit additional information concerning the decedent's domicil; and, introducing in evidence the judgment of the Supreme Court of Pennsylvania hereafter referred to, first rendered September 26, 1932, they claimed that Dorrance was, or must be deemed to have been, domiciled in Pennsylvania, in view of that judgment and other evidence. On October 10, 1932, the New Jersey Tax Commissioner again assessed upon the estate the tax of $12,247,333.52. The executors appealed to the Prerogative Court, which, by final decree entered May 11, 1934, affirmed the assessment, subject to a modification not here material. *In re Dorrance*, 115 N. J. Eq. 268; 170 Atl. 601; 116 N. J. Eq. 204; 172 Atl. 503. The executors procured, by writ of certiorari, a review of the assessment by the New Jersey Supreme Court. On February 8, 1935, that court affirmed the decree of the Prerogative Court and dismissed the writ of certiorari with costs. *Dorrance* v. *Thayer-Martin*, 13 N. J. Misc. Rep. 168; 176 Atl. 902. On February 13, 1935, the executors' notified the defendant Martin that they intended to take an appeal to the New Jersey Court of Errors and Appeals. They have not done so; but under the state practice an appeal may be taken at any time prior to February 11, 1936.[3]

Dorrance had a residence also in Pennsylvania. That State claimed that he was domiciled there at the time of his death; and promptly commenced proceedings to subject his estate, including the intangible property, to the Pennsylvania inheritance tax. In March, 1933, it recovered in its Supreme Court a final judgment against the executors, which, adjudging that Dorrance's domicil was at the time of his death in Pennsylvania, imposed an inheritance tax upon the intangible property, as well as upon the real estate and tangible personal property situ-

---

[3] 2 Comp. Stats. of N. J. of 1910, p. 2208, § 2; 2 Cum. Supp. of 1924, p. 2818, § 163–301.

ated there. *Dorrance's Estate,* 309 Pa. 151; 163 Atl. 303. No question under the Federal Constitution was presented. Certiorari was denied by this Court, 287 U. S. 660; 288 U. S. 617. In satisfaction of the judgment, the executors paid to Pennsylvania $14,394,698.88, and $104,278.03 as interest thereon; and they also gave a bond in the sum of $4,000,000 to pay additional amounts, if upon final determination of the federal estate tax they should appear to be due.

In the suits at bar, the plaintiffs insist that the Pennsylvania judgment was *in rem* and bound New Jersey and the defendants although they were not parties to that litigation; that the New Jersey courts and administrative authorities, in refusing to give effect to the Pennsylvania judgment holding that Dorrance was domiciled in the latter State, violated the full faith and credit clause of the Federal Constitution; and that if they construed the New Jersey Transfer Inheritance Tax Act as applying to intangible property the situs of which was outside New Jersey, they violated the due process and equal protection clauses of the Fourteenth Amendment. The plaintiffs contend further that if the Pennsylvania judgment is not *in rem,* the federal court is now free to ascertain the facts as to domicil and reach its conclusion independently of the prior decisions of the courts of the two States; and that the evidence introduced below establishes that Dorrance's domicil was in Pennsylvania.

The plaintiffs claim that the District Court erred in holding that § 265 of the Judicial Code prevents the federal court from granting the injunctions prayed for, since at the time of the institution of these suits in the federal court the proceedings in New Jersey had not passed into the judicial stage; and since, in any case, an independent judicial proceeding was necessary to collect the tax. The defendants concede that § 265 would not bar federal courts from staying collection of the tax if the state pro-

ceedings had not passed from the administrative into the judicial stage. See *City Bank Farmers Trust Co.* v. *Schnader*, 291 U. S. 24; 293 U. S. 112. But they assert that the proceedings in the Supreme Court of New Jersey reviewing by certiorari the final decree of the Prerogative Court (itself a judicial tribunal) were proceedings judicial in their nature; and that the stay sought is of proceedings pending in a court of New Jersey. The defendants contend also that the judgment of the New Jersey Supreme Court to which the executors were parties is *res judicata* as to the domicil of the deceased and as to the liability of the estate for the taxes assessed by New Jersey; and they set up other reasons why the relief prayed should be denied. We have no occasion to consider any of these defenses, since we agree with the District Court that it was without jurisdiction to grant the injunction.

*First.* To determine whether a judicial proceeding was pending when these suits were brought, we turn to the law of New Jersey. The proceedings, administrative and judicial, governing the assessment and the collection of its inheritance tax are, in substance, these: The assessment is made by the State Tax Commissioner, his duty being to " assess and fix the cash value of such estate and levy the tax to which the same is liable." He performs this duty after receiving the report of an appraiser appointed by him. The appraiser makes the appraisal and essential findings after notice to the interested parties and hearing evidence and argument.[4] Any person dissatisfied with the appraisal or the assessment may appeal therefrom to the " Ordinary," that is, the Prerogative Court. *Bugbee* v. *Van Cleve*, 99 N. J. Eq. 825, 834; 134 Atl. 646. Upon that court is conferred jurisdiction " to hear and determine all questions in relation to any tax levied under the

---

[4] N. J. Laws of 1931, c. 303, § 18, pp. 763, 764; c. 336, p. 823.

provisions of " the Act.[5] The decree of the Prerogative Court is reviewable on writ of certiorari by the New Jersey Supreme Court; [6] and its judgment is reviewable by the Court of Errors and Appeals.[7]

As to the collection of the tax, § 21 of the Transfer Inheritance Tax Act provides that " if it shall appear to the State Tax Commissioner that any tax . . . has not been paid according to law," he shall report such fact to the register of the Prerogative Court, who must issue a citation citing the interested parties to " show cause why such tax should not be paid." [8] The Attorney General, if he has probable cause to believe that a tax is due and unpaid, and is so notified by the Commissioner, shall prosecute the proceeding before the Prerogative Court.[9] The service of the citation, and subsequent proceedings thereon, shall conform to the practice prevailing in the Prerogative Court, including the power to commit for contempt.[10] Such proceedings would be the same in character whether the review of the original assessment had ended with the appeal to the Prerogative Court, or had been followed by certiorari to the Supreme Court; and whether or not an appeal was taken from the judgment of the Supreme Court to the Court of Errors and Appeals. Upon the making by the Prerogative Court of any decree, a copy thereof filed by the Commissioner with the clerk of the Supreme Court has the same effect as a judgment at law, and execution may issue thereon.[11]

[5] N. J. Laws of 1909, § 20, p. 335.

[6] See *In re Roebling's Estate*, 91 N. J. Eq. 72, 75.

[7] See *Central R. Co.* v. *State Tax Department*, 112 N. J. Law 5; 169 Atl. 489.

[8] N. J. Laws of 1931, § 21, pp. 764, 765.

[9] *Id.*, § 22, p. 765.

[10] N. J. Laws of 1900, c. 148, p. 347; see note 14.

[11] N. J. Laws of 1902, c. 158, § 44, pp. 524, 525; N. J. Laws of 1931, § 21.

Thenceforward, collection is pursued as prescribed for civil judgments in "an Act respecting executions." 2 Comp. Stats. of N. J. of 1910, p. 2243. Paragraph Fifth of § 1 of the Inheritance Tax Act provides that under certain conditions executors (and others) "shall be personally liable for any and all such taxes until the same shall have been paid as hereinafter directed, for which an action of debt shall lie in the name of the State of New Jersey."

*Second.* The Supreme Court's review of the administrative act of assessing was judicial action. It is a court created by the constitution; and its jurisdiction to review, on certiorari, proceedings of inferior tribunals is an inheritance from the Court of Kings Bench. The Supreme Court has broad powers. It may, as recited in the New Jersey Certiorari Act of 1903, as amended, "determine disputed questions of fact, as well as of law"; and when inquiring into the facts, is not limited to the evidence introduced before the tribunal whose proceeding is under review. It may act "by depositions taken on notice, or in such other manner as is according to the practice of the court"; and it "may reverse or affirm, in whole or in part, such tax or assessment."[12] Power to review the facts is conferred in New Jersey not only upon the Supreme Court but also upon its highest appellate tribunal—the Court of Errors and Appeals. Power, upon enquiry into the facts, to take evidence additional to that introduced before the tribunal whose action is under review is a power not uncommonly possessed by appellate

---

[12] See *State* v. *Justices of Middlesex,* 1 N. J. Law 244, 248; *Royal Mfg. Co.* v. *Rahway,* 75 N. J. Law 416; 67 Atl. 940; *Dubelbeiss* v. *West Hoboken,* 82 N. J. Law 683, 686; 82 Atl. 897; *Trenton & Mercer County Traction Corp.* v. *Mercer County Board of Taxation,* 92 N. J. Law 398; 105 Atl. 222; *Gibbs* v. *State Board of Taxes,* 101 N. J. Law 371; 129 Atl. 189; *Kearney* v. *State Board of Taxes,* 103 N. J. Law 26, 27; 135 Atl. 61.

courts in proceedings strictly judicial. The power to "reverse or affirm, in whole or in part" does not imply that the court may exercise administrative discretion. Such power is a common incident of the judicial review of taxation. As the administrative proceeding of assessing the tax had ended when the Supreme Court granted its writ of certiorari, we have no occasion, in this connection, to enquire whether it had not already ended when the appeal to the Prerogative Court was allowed.

*Third.* The plaintiffs contend that even if the action of the Supreme Court was judicial, the federal court had jurisdiction of this controversy because the judgment of the New Jersey courts was limited to a review of the assessment; that in order to collect the tax—to translate the assessment into an enforceable judgment—the state officials must institute a new and independent action, namely either an action for debt in the name of the State or a statutory proceeding against the persons interested in the estate; and that since no such action or proceeding had been taken at the time when these suits were filed, there is here no application to " stay proceedings in any court of " New Jersey. That is, the plaintiffs contend that the determination of the amount and validity of the tax is to be treated as an isolated and distinct proceeding, not as a step in the process of determining and collecting the tax imposed.

It is true that if the executors fail to pay the tax adjudged to be due, New Jersey must take further proceedings to compel the executors to discharge their obligation. This is so even if the executors do not avail themselves of their existing right to appeal to the Court of Errors and Appeals, or if upon such appeal that court affirms the judgment of the Supreme Court. But it is not true that such further proceeding would be, in legal contemplation, independent action. Upon dismissal of the certiorari, the

cause was remanded to the Prerogative Court. By the appeal of the executors, it had acquired jurisdiction not only to determine the tax due, but to take appropriate proceedings for its collection. Its jurisdiction continues until its decree is satisfied.

The further proceedings required to compel satisfaction of the decree establishing liability for the tax do not differ in essence from those required to satisfy any judgment for a debt recovered at law or any decree in chancery for the payment of money. The procedure of the Prerogative Court subsequent to a decree follows that of the equity courts, which had, ordinarily, no power to enforce their decrees except by citation for contempt.[13] Chapter 148 of the laws of 1900, which provides, as a means of collection, that the Prerogative Court shall issue a citation if it appears that a tax found to be due has not been paid, is declaratory of the existing procedure.[14] Section 21 of the Transfer Inheritance Tax Act provides that the lien created by docketing a decree " shall have the same effect

[13] See 2 Daniell, Chancery Pleading & Practice (6th Am. ed., 1894) 1042 et seq.

[14] N. J. Laws of 1900, § 7, p. 347: " If any person shall neglect or refuse to obey any citation, or to perform any sentence or decree of the ordinary or judge of the prerogative court, it shall be lawful for such ordinary and such court to cause such person or persons, by process directed to any sheriff of any county of this state, to be taken and imprisoned until he shall obey the said citation, or perform the said sentence or decree; and every sheriff is hereby directed to cause all such process, to him at any time directed, to be duly executed, and to confine the person against whom such process shall be issued, as in execution, until he shall be delivered by due course of law; and if any sheriff shall neglect his duty therein, he shall be answerable to the party aggrieved in such manner as he would be answerable upon process of the like nature issuing out of the supreme court." Imprisonment and realization upon the tax lien are means provided for enforcing also other New Jersey taxes. See Laws of 1918, § 606, p. 874; *McLean* v. *Delaware, Lackawanna & Western Coal Co.*, 13 N. J. Misc. Rep. 83, 84; 176 Atl. 557; see note 10.

as a lien by judgment, and execution shall issue thereon according to the rules and practice appertaining to other judgments." [15]

*Fourth.* The prohibition of § 265 is against a stay of " proceedings in any court of a State." That term is comprehensive. It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process.[16] It applies to appellate as well as to original proceedings; and is independent of the doctrine of *res judicata.* It applies alike to action by the court and by its ministerial officers; applies not only to an execution issued on a judgment,[17] but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective.[18] The prohibition is applicable whether such supplementary or ancillary proceeding is taken in the court which rendered the judgment or in some other. And it governs a privy to the state court proceeding—like Elinor Dorrance Hill—as well as the parties of record. Thus, the prohibition applies whatever the nature of the proceeding, unless the case presents facts which bring it within one of the recognized exceptions to § 265.[19] It is not suggested that there is a basis here for any such exception.

The conclusion reached by the lower court is consistent with *City Bank Farmers Trust Co.* v. *Schnader,* 291 U. S.

---

[15] See note 11.

[16] Compare *Hyattsville Building Assn.* v. *Bouic,* 44 App. D. C. 408, 413; *United States* v. *Collins,* 25 Fed. Cas. 14,834, pp. 539, 544; Charles Warren, " Federal and State Court Interference," 43 Harv. L. Rev. 345, 366–78.

[17] *Ruggles* v. *Simonton,* 20 Fed. Cas. 12,120, p. 1325; *Leathe* v. *Thomas,* 97 Fed. 136; *Ke-Sun Oil Co.* v. *Hamilton,* 61 F. (2d) 215.

[18] *Mutual Reserve Fund Life Assn.* v. *Phelps,* 190 U. S. 147, 159; *American Assn.* v. *Hurst,* 59 Fed. 1, 5; *American Shipbuilding Co.* v. *Whitney,* 190 Fed. 109.

[19] Compare *Wells Fargo & Co.* v. *Taylor,* 254 U. S. 175, 182–184; *Essanay Film Co.* v. *Kane,* 258 U. S. 358, 361; *Riehle* v. *Margolies,* 279 U. S. 218, 223.

24; and with all the other decisions of this Court distinguishing administrative from judicial proceedings to which the plaintiffs have called our attention; with the cases which hold that this Court lacks jurisdiction where the review sought is legislative or administrative in character; with those which hold that the lower court lacked jurisdiction because the plaintiff had not exhausted his administrative remedies; and with those which hold that the assessment of taxes is not an order within the meaning of § 266 of the Judicial Code.[20]

*Affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of these cases.

---

[20] See, e. g., *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210; *Keller* v. *Potomac Electric Co.*, 261 U. S. 428; *Ex parte Williams*, 277 U. S. 267, 271–2.