INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCALS NO. 542, 542-A, 542-B et al. v. WILLIAM D. BAKER CO. et al.

Civ. A. No. 12559.

United States District Court
E. D. Pennsylvania.

Oct. 23, 1951.

774

Myron Jacoby, Jacoby & Maxmin, Manus McHugh, A. Bernard Hirsch, Philadelphia, Pa., for defendants.

Abraham E. Freedman, Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiffs.

CLARY, District Judge.

This is an action for a preliminary injunction and other relief. The parties are the International Union of Operating Engineers, Locals No. 542, 542-A, 542-B, the individual members thereof, and Roy J. Underwood, individually and as president and business manager of said local unions, hereinafter referred to as "Union", plaintiffs, General Building Contractors Association, Pennsylvania Excavators Association, and The Contractors Association of Philadelphia, individually and as agents and representatives of their respective members, individuals and firms engaged in the construction industry in and around the City of Philadelphia, hereinafter referred to as "Contractors", defendants. The action arises out of a certain collective bargaining agreement entered into between the Union and the Contractors.

In order to make clear the issues before me, it is necessary to advert to some facts and circumstances as they appear from the pleadings and testimony at the hearing on the petition for preliminary injunction.

On October 7, 1949, a collective bargaining agreement was entered into between the Union and the Contractors, effective as of May 1, 1949, for the year May 1, 1949 to April 30, 1950. On or about April 14, 1950, negotiations were had between Harry R. Halloran, for the Contractors, and Robert G. Kelly, Esquire, for the Union, to extend the terms of the 1949 agreement for a further period of time conditioned upon the setting up of a welfare plan. The Union contends that the extension of the collective bargaining agreement was for a

period of one year, until April 30, 1951, and the Contractors contend that the extension was for a period of two years, expiring April 30, 1952. Thereafter, on August 17, 1950, the declaration of trust in connection with the welfare plan was executed. It provided for the administration of the trust by six trustees, three to be named by the Union and three to be named by the Contractors. On the day previous, August 16, 1950, a written addendum to the 1949 collective bargaining agreement was executed by Halloran, on behalf of the Contractors, and Kelly, purportedly on behalf of the Union. That agreement was dated April 14, 1950, and purported to extend the terms of the 1949 collective bargaining agreement for a period of two years, until April 30, 1952.

Thereafter, on the 11th day of October, 1950, Roy J. Underwood, president and business manager of the three local unions wrote to Harry Halloran, the negotiator for the Contractors, repudiating the addendum dated April 14, 1950, and disavowing the authority of Kelly to enter into such a contract on behalf of the unions.

On or about the 21st day of February, 1951, Roy J. Underwood, on behalf of the Union, notified the Contractors that the 1949 agreement, as extended, would terminate on April 30, 1951, and advised them that he was prepared to negotiate terms and conditions of a new agreement to become effective May 1, 1951. The Contractors did not reply. When it became apparent on or about the 27th day of April 1951 that the Union would not retreat from its position that the contract terminated on April 30, 1951, and when it became apparent that the Union would call a strike, the Contractors instituted an action in the Court of Common Pleas No. 5 of Philadelphia County, as of March Term 1951, No. 4413, setting forth the 1949 contract and the addendum dated April 14, 1950, and praying for an injunction to restrain the unions and their membership from engaging in any work stoppage or strikes and to require the unions to furnish all employees as might be required by the defendant Contractors. After hearing, that court entered a preliminary injunction as prayed for by the Contractors. The order was predicated upon a finding by the Court of Common Pleas that there existed a bona fide collective bargaining agreement between the parties which included a covenant not to strike and which agreement extended to April 30, 1952. The injunction restrained the plaintiffs herein from violating the terms of the said collective bargaining agreement found by that Court to be validly existing to April 30, 1952.

The complaint in the action before me avers further that because of the disagreement over the validity of the addendum, the trustees of the welfare fund representing management had failed to function to put into existence the benefits provided for in the welfare agreement in that they had neither purchased a group policy of insurance, as provided in the agreement, nor paid valid claims out of the principal funds paid into the welfare fund. Further, it is alleged that the Contractors had not furnished sufficient information to the administrator of the welfare fund to enable him to determine who were or who were not in default and that the action of the management trustees had resulted in a deprivation to the members of the union of benefits granted them under the welfare agreement.

As bases for their right of action in this court, the plaintiffs herein contended:

1. That the Court of Common Pleas did not have jurisdiction to entertain the bill and therefore all orders of the court are illegal and constitute an unlawful encroachment on the jurisdiction of the federal courts.

2. That the several orders of the Court of Common Pleas are in violation of plaintiffs' legal right to strike and are in direct violation of the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq.

3. That although an appeal had been taken to the Supreme Court of Pennsylvania that court had refused application for a supersedeas and a special listing and that by the time the appeal is disposed of the disputed contract period will have expired and the question rendered moot to the great prejudice of the plaintiffs.

Plaintiffs averring themselves to be in need of equitable relief prayed this court:

(a) To issue a preliminary injunction enjoining and restraining the defendants and each of them, their officers, agents and attorneys, from continuing and prosecuting the bill in equity in the state court and requiring said defendants to withdraw and mark dismissed the action in the Court of Common Pleas.

(b) That the defendant contractors be adjudged guilty of unfair labor practice in failing and refusing to bargain collectively with the plaintiff unions and that this court forthwith require the defendant contractors to bargain collectively in good faith with the plaintiff unions.

(c) That the contractors be required and directed to make full and complete compliance with the terms of the welfare fund.

(d) That this court issue a declaratory judgment declaring the agreement found to be valid by the Court of Common Pleas No. 5 to be unauthorized, void and of no effect.

(e) That the court enter an award to members of the plaintiff unions of all damages retroactive to May 1, 1951, incurred by the members of the plaintiff unions as a result of the action in the Court of Common Pleas No. 5 of Philadelphia County.

(f) A general prayer for relief which will be adverted to at a later point in this opinion.

The chronological history of the case in this court is as follows: The action was instituted on August 2, 1951 and a preliminary hearing was set on the motion for preliminary injunction for August 8, 1951. At the request of counsel, the hearing was continued to the 20th day of August, 1951, and meanwhile on August 15, 1951 defendants moved to dismiss the complaint. The legal questions on the motion to dismiss were argued on the 20th day of August, 1951 and the court, after consideration, decided to hold in abeyance a ruling on the motion to dismiss and set September 24, 1951 for the taking of testimony. Testimony of the plaintiffs was then taken on September 24th and September 25th and both sides rested on the morning of September 26th. Thereupon in open court at the conclusion of the hearing, the court made the following orders.

First, the motions to dismiss were denied on the ground that the court had jurisdiction of the controversy set forth in plaintiffs' complaint.

Second, the court denied a preliminary injunction.

Third, the court stated that it would appoint an umpire.

The Labor Management Relations Act of 1947, 29 U.S.C.A. 141 et seq., popularly known as the Taft-Hartley Act, confers upon the district courts of the United States jurisdiction to entertain suits for violation of collective bargaining agreements between employers and labor organizations representing employees in an industry affecting interstate commerce without respect to the amount in controversy and without regard to the citizenship of the parties. 29 U.S.C.A. § 185. Clearly, this complaint sets forth a dispute in that it alleges that the defendant contractors have not lived up to their agreement under the welfare plan, which is part and parcel of the collective bargaining agreement. There is likewise a dispute as to the very existence of a collective bargaining agreement at this time. The complaint, therefore, sets forth claims upon which relief can be granted. Where a complaint sets forth a claim upon which relief can be granted by this court, a motion to dismiss should be denied. Barron and Holtzoff "Federal Practice and Procedure", Volume 1, Sec. 356. While some parts of the relief requested may be improper and outside the jurisdiction of the court, nevertheless, since the complaint as a whole sets forth an issue within the jurisdiction of the court and upon which relief can be granted, the motion to dismiss should be denied. The plaintiffs in this case have set forth claims upon which relief can be granted by this court and, consequently, the motion to dismiss was denied.

By the second order entered in open court, plaintiffs' request for a preliminary injunction against the defendants, restraining them from continuing and prosecuting the bill in equity in the state court and re-

quiring them to withdraw the action in the state court, was denied. In effect, plaintiffs sought an injunction by a federal court of a state court injunction. As early as 1793, the Congress of the United States, recognizing the delicacy inherent in the problem of interference by federal courts with the functioning of state courts, by appropriate legislation, placed severe restrictions upon the power of federal courts to interfere with the processes of and proceedings before state courts. The present legislation on that subject is embodied in Section 2283, Title 28 United States Code, which provides as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Counsel for plaintiffs in this action argue that the request for the injunction is not directed to the state court, but is directed against the parties and is therefore without the proscription of Section 2283, and secondly, that the injunction is proper as "necessary in aid of" the jurisdiction of this court and therefore within the exceptions embodied in Section 2283.

■ As to the first contention, that the requested injunction would be directed to the parties and not to the court, that is answered by the following language of Mr. Justice Frankfurter in his opinion in the case of Oklahoma Packing Company v. Oklahoma Gas & Electric Co., 308 U.S. 530, 309 U.S. 4, at pages 8 and 9, 60 S.Ct. 215, at page 217, 84 L.Ed. 537: "The present suit, therefore, is one for an injunction 'to stay proceedings' previously begun in a state court. The decree below is thus within the plain interdiction of an Act of Congress, and not taken out of it by any of the exceptions which this Court has heretofore engrafted upon a limitation of the power of the federal courts dating almost from the beginning of our history and expressing an important Congressional policy— to prevent needless friction between state and federal courts. * * * (citing cases). That the injunction was a restraint of the parties and was not formally directed against the state court itself is im-

material. Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 80 L.Ed. 293."

■ Plaintiffs' second contention is that this is one of the exceptions embodied in Section 2283 since this is an injunction "in aid of" the jurisdiction of this court. This argument is based upon a premise of exclusive jurisdiction in the federal court of the subject matter of the action. The same argument was advanced in the case of H. J. Heinz Co. v. Owens, 9 Cir., 189 F.2d 505, opinion by Judge Hastie of the Third Circuit, sitting by special designation in the Ninth Circuit. That was a case involving patent rights which had been found valid in a state court. Thereafter an action was instituted in a federal court for injunction and declaratory judgment to have those same patent rights declared invalid. The basis of the complaint in the federal court was that the state court was without jurisdiction to make any determination of the patent rights and that its decree constituted an unlawful encroachment on the jurisdiction of the federal courts under the patent laws. That argument was rejected and Judge Hastie in his opinion made it clear that a collateral attack of that nature on the jurisdiction of the state courts would not be entertained. It follows, therefore, that the phrase "in aid of its jurisdiction" does not permit interference by a federal court even where it is alleged that there is exclusive jurisdiction in the federal court. Judge Hastie's language on that point in the Heinz opinion, 189 F.2d at page 509 is appropriate at this point: "We find no justification for prejudging the question or for assuming that the tribunal will not respect any controlling limitations upon its power. Cf. Adams v. Decoto, D.C.S.D.Cal.1927, 21 F. 2d 221. But if it should err and a substantial federal question should be involved, there is open a course of review even to our highest court."

See also the opinion of Kalodner, J., now Circuit Judge, in the case of United Electrical, Radio & Machine Workers of America v. Westinghouse Electric Corporation, D.C.E.D.Pa., 65 F.Supp. 420, in which he stated at page 423: "In any event, this court cannot assume that a state court will act without regard to the applicable law

778

and without due consideration for the rights of the petitioners here. The contrary is true, and is amply demonstrated by the cases: Park & Tilford Import Corp. v. International Brotherhood of Teamsters, etc., supra [Cal.Sup., 155 P.2d 16], is exemplary. Moreover, whether the particular proceeding is, in whole or in part, one within the jurisdiction of the state court, and whether that court has power to grant the remedy prayed for, are questions which may be capably determined by that court, and error is a matter of appellate review. The question of jurisdiction, if at all involved, is appropriately one for the decision of the state court and could manifestly be presented and determined in the action there. Kohn v. Central Distributing Co., 1939, 306 U.S. 531, 534, 59 S.Ct. 689, 83 L.Ed. 965."

Further light on the meaning of the phrase "in aid of its jurisdiction" can be gathered from the Reviser's note following Section 2283 of Title 28, U.S.C.A.: "The phrase 'in aid of its jurisdiction' was added to conform to section 1651 of this title and to make clear the recognized power of the Federal courts to stay proceedings in State cases removed to the district courts."

For the reasons set forth in the foregoing discussion, the court denied the petition for preliminary injunction.

The third point on which the court acted was in accordance with Section 7 of Article IV of the welfare agreement which in effect embodied the provisions of Section 302 (c) of the Taft-Hartley Act, 29 U.S.C.A. § 186(c), that the parties might provide in their welfare agreement for the appointment of a neutral umpire in case of deadlock between the trustees over the administration of the welfare fund, and one method provided in the Act was by application to the United States District Court of the district. This was considered as part of the general relief asked by the plaintiffs in this case and since the defendants in a separate action, Civil Action No. 12742, (not yet at issue) likewise ask for the appointment of an umpire under the Welfare Agreement, I choose in the interest of expeditious handling of the request to make the appointment under this present action. It was apparent to the court that a deadlock between the trustees of the welfare fund had developed, rendering necessary the appointment of a neutral umpire and the court stated that it would appoint an umpire.

Consequently, a separate order will be filed concurrently with this opinion appointing Dr. George W. Taylor of the University of Pennsylvania, as neutral umpire.