**Myron HARPER and Jane Harper and Robert Garnett and Carol Garnett, Plaintiffs,**

v.

**FEDERAL LAND BANK OF SPOKANE, a corporation; the United States of America, acting through the Farmers Home Administration; Willamette Production Credit Association, a corporation in liquidation; Merle Thomas Henny and Darlene F. Henny, husband and wife; Thomas Henny Nursery, Inc., a corporation; Frank W. Naylor, Jr., in his capacity as Chairman and a member of the Farm Credit Administration Board; Jim R. Billington and Marvin R. Duncan, each in his capacity as a member of the Farm Credit Administration Board; the Farm Credit Administration; and Kenneth P. Krueger, in his capacity as President and Chief Executive Officer of the Federal Land Bank of Spokane, Defendants.**

Civil No. 88–449–PA.

United States District Court, D. Oregon.

June 27, 1988.

Michael J. Martinis, Webb & Martinis, Salem, Or., James T. Massey, Farmers' Legal Action Group, Inc., St. Paul, Minn., Lawrence B. Rew, Corey, Byler, Rew, Lorenzen, Hojem, Pendleton, Or., for plaintiffs.

John D. Albert, Paul R.J. Connolly, Churchill, Leonard, Brown & Donaldson, Salem, Or., for defendant Willamette Production Credit Ass'n.

John A. Bryan, Sherman, Bryan, Sherman & Murch, Salem, Or., for defendants Federal Land Bank of Spokane and Kenneth Krueger.

Philip J. Hand, Klein & Hand, P.C., Woodburn, Or., for defendants Merle and Darlene Henny and Thomas Henny Nursery, Inc.

John R. Bolton, Asst. Atty. Gen., Charles H. Turner, U.S. Atty., Theordore Hirt, Neal Dittersdorf, Asst. U.S. Attys., Civil Div., Dept. of Justice, Washington, D.C., for federal defendants.

## OPINION

PANNER, Chief Judge.

Plaintiffs Myron and Jane Harper and Robert and Carol Garnett bring this action

against the Federal Land Bank and its president (FLB), the Willamette Production Credit Association (WPCA), the United States of America acting through the Farmers' Home Administration (FmHA), Merle and Darlene Henny and the Thomas Henny Nursery, Inc. (the Hennys), and the Farm Credit Administration and its board members (FCA).

On May 2, 1988, after a hearing, I granted the Harpers' motion for a preliminary injunction and enjoined defendants from transferring the Harpers' property pending resolution of their claims. On June 10, 1988, I granted the Garnetts' motions to join this action and for a temporary restraining order enjoining FLB from evicting the Garnetts from their property. On June 20, 1988, plaintiffs and FLB agreed to the continuation of an injunction against FLB concerning the Garnetts' property.

On June 21, 1988, a court trial was held on the Harpers' claims against FLB, WPCA, and the Hennys. The Harpers allege violations of the Agricultural Credit Act of 1987, 12 U.S.C. §§ 2001–2279aa–14 (1988). The parties agreed and I ordered that all other claims would be addressed separately at a later date.

At the trial, I allowed plaintiffs until June 22, 1988 to submit an additional affidavit of Myron Harper. I allowed defendants to depose the Harpers' previous attorney and file that deposition by June 23, 1988. I also allowed all parties to file supplemental briefs by June 23, 1988. Defendants, without prior approval, submitted a second affidavit of Chris Blumfield. Plaintiffs object to that affidavit. Because the record remained open after trial only for a very limited purpose, I strike the second affidavit of Chris Blumfield.

Based on the record, I find in favor of the Harpers.

## BACKGROUND

The Harpers own and operate a farm in Marion County, Oregon. The Harper family has owned the property since 1853. The property consists of two separate tracts of land. The Hennys are tenants on one tract of land.

FLB claims an interest in the property under mortgages executed in 1970 and 1975. WPCA claims an interest in the property under mortgages executed in 1976, 1980, and 1981. FmHA claims an interest in the property under a mortgage executed in 1979.

In the 1980s, the Harpers experienced financial difficulties. WPCA rejected the Harpers' request for a loan renewal. In October 1984, WPCA filed a foreclosure action in state court. In February 1985, the Harpers filed an action in this court against numerous institutions and officers of the farm credit system, including many of these defendants. The Harpers sought, *inter alia,* an order enjoining the WPCA's state foreclosure proceeding. On June 4, 1985, I denied the Harpers' motion for an injunction and dismissed the action. *Harper v. Farm Credit Admin.,* 628 F.Supp. 1030 (D.Or.1985).

The state court action proceeded. The Harpers filed a Chapter 11 bankruptcy petition. In July 1986, WPCA obtained relief from the automatic stay and the state court foreclosure action was reinstated. In January 1987, upon the Harpers' motion, the bankruptcy court dismissed their petition.

In January 1987, FLB filed a foreclosure action against the Harpers in state court. In the spring and summer of 1987, the Harpers negotiated with WPCA, FLB, FmHA, and the Hennys without success. On September 3, 1987, the state court entered a default judgment of foreclosure in favor of FLB. On October 9, 1987, the state court entered a stipulated judgment of foreclosure in favor of WPCA.

After the judgments entered, the Harpers filed a Chapter 12 bankruptcy petition. On February 18, 1988, the bankruptcy court dismissed their petition.

In March 1988, a sheriff's sale was held on the Harpers' property. FLB purchased one tract of land, and the Hennys purchased the other. FLB moved for an order confirming the sale. The Harpers moved to set aside the judgment. Prior to a hearing on those motions, the Harpers filed this action. The state court denied the Har-

pers' motion to set aside the judgment and, over the Harpers' objection, confirmed the sale.

## DISCUSSION

The Agricultural Credit Act of 1987 (Act) took effect on January 6, 1988. The Act provides that when a lender determines that a loan is or has become distressed, the lender shall provide written notice to the borrower that the loan may be suitable for restructuring. 12 U.S.C. § 2202a(b)(1). If the lender determines that the potential cost of restructuring the loan is less than or equal to the potential costs of foreclosure, the lender shall restructure the loan. *Id.* at § 2202a(e)(1). No lender may foreclose or continue any foreclosure proceeding with respect to any distressed loan before the lender has completed any pending consideration of the loan for restructuring. *Id.* at § 2202a(b)(3).

The Harpers contend that when the Act took effect in January 1988 FLB and WPCA should have made the calculations to determine whether it was cost-effective to restructure their loans. The Harpers seek an order enjoining FLB and WPCA from continuing the foreclosure proceeding until this calculation is completed.

FLB and WPCA move for summary judgment on the grounds that 1) there is no private right of action under the Act, 2) defendants did not violate the Act, 3) the relief sought is prohibited by the Anti–Injunction Act, 4) the relief sought is prohibited by the tenth amendment, 5) the Harpers are estopped from seeking restructuring, and 6) the complaint fails to state a claim against WPCA.

### 1. *Private Right of Action.*

█ The Act does not expressly provide for a private right of action. In determining whether to infer a private right of action from a federal statute, the focal point is Congress' intent when enacting the statute. *Thompson v. Thompson,* —— U.S. ——, 108 S.Ct. 513, 518, 98 L.Ed.2d 512 (1988). As a guide to discerning that intent, the Supreme Court set forth four factors to be considered:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted).

Congress entitled Title I of the Act "Assistance to Farm Credit System Borrowers." In that Title, Congress established broad rights for borrowers and mandatory duties for lenders. The Harpers are borrowers within the farm credit system and, as such, are one of the class for whose especial benefit the statute was enacted.

The legislative history supports an implied right of action. Defendants contend that because Congress considered enacting an express right of action and later deleted that section, no right of action may be implied. Generally this would demonstrate congressional intent to deny a private right of action. Here, however, a close look at the legislative history demonstrates Congress' intent to provide such a right.

On May 6, 1987, Senators Pryor, Cochran, Fowler, and Sanford proposed the 1987 Act, which included an express private right of action. S. 1156, 100th Cong., 1st Sess., 133 Cong. Rec. 6105 (May 6, 1987). The section by section analysis states, "Section 302 adds a new section 5.38 to the Farm Credit Act of 1971 *to affirm* that borrowers have a right to sue, in federal court ..." *Id.* at 6107 (emphasis added). Senator Fowler stated:

I am particularly proud to be the sponsor of legislation that spells out a borrowers' bill of rights. The borrowers in this system have been abused, mislead, coerced

by Farm Credit Administration banks and officials who have sought to remake this system along new lines, but to the detriment of local control and cooperative principles. To protect against such abuses in the future, the bill provides borrowers with specific rights, including the following: ... Borrowers have the right to sue in Federal court any institution of the Farm Credit System for violating duties owed to the borrower....

*Id.* at 6109.

On August 7, 1987, the Senate again considered the 1987 Act. S. 1665, 100th Cong., 1st Sess., 133 Cong.Rec. 11724 (August 7, 1987). That bill also included an express provision for a borrowers' private right of action. Senator Boren explained that "the bill will ensure a person's right to sue the Farm Credit System and the Farm Credit Administration and provides that the Federal district courts would have original jurisdiction without regard to the amount in controversy." *Id.* at 11755.

On September 21, 1987, the House discussed the 1987 Act. Representative Watkins stated:

My amendment would allow the borrowers the right to sue. I really believe in my heart that the right to sue is implied within the bill itself, but I think it is our responsibility and our obligation to make sure that there is no question that the borrower has that right.

H.R. 3030, 100th Cong., 1st Sess., 133 Cong.Rec. 7638, 7692 (September 21, 1987). Another member of the House asked whether farmers had the right to sue now. Representative Watkins responded that in some states they did, and others they did not. Representative De La Garza immediately stated, "I have no problem with the gentleman's intention in allowing borrowers to sue, although I think basically they have that right now." *Id.* at 7693.

On December 2, 1987, the Senate revisited the 1987 Act. Senator Burdick proposed an amendment to the bill different from the House bill because the House bill "actually restricts the right to sue." S. 1665, 100th Cong. 1st Sess., 133 Cong.Rec. 16993, 16995 (December 2, 1987). He stated that "the House provision arguably restricts the right to borrowers of the System. This restricts rights of persons who are not yet borrowers, or who are former borrowers, to sue." *Id.* Senator Boren stated:

I have been told that the House has unduly restricted the right of the borrower to bring suit and that that is the proposal that is in the House bill. It would be my thought ... that we would oppose that House provision in the conference committee. That would have much the same effect as the adoption of the Burdick amendment would have without our attempting to write the actual language of the amendment here on the floor at this time.

*Id.* Senator Lugar stated, "I would confirm the understanding that ... [w]e will in fact oppose the House amendment in conference. We understand the problem, and we would appreciate the Senator's not pursuing this amendment on this occasion with that assurance." *Id.*

Consistent with their expressed intent, the Senate opposed the House provision, and it was deleted from the final Act. H.R. 3030, 100th Cong., 1st Sess. 133 Cong. Rec. 11820 (December 18, 1987).

■ Both the House and the Senate intended that the borrower have the right to bring a private action in federal court to enforce the Act. However, members of Congress, particularly Representative De La Garza, Chairman of the House Agricultural Committee, and Senators Boren and Lugar, all members of the conference committee, were under the misperception that the farmers already had the right to sue.

In *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court addressed a similar situation. In *Cannon*, the Court analyzed whether there was a private right of action under Title IX of the Education Amendments which Congress modelled after Title VI of the Civil Rights Act. Title VI was passed in 1964, but "in 1972, when [Congress] passed Title IX, Congress was under the impression that Title VI could be enforced by a private right of action and

that Title IX would be similarly enforceable." *Id.* at 710–11, 99 S.Ct. at 1964–65. The Supreme Court stated that " 'the relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the law was.' " *Id.* at 711, 99 S.Ct. at 1965 (quoting *Brown v. GSA*, 425 U.S. 820, 825, 96 S.Ct. 1961, 1964, 48 L.Ed.2d 402 (1976)).

Here, as in *Cannon*, an implied right of action is consistent with the intent expressed in both the House and the Senate. By eliminating the express provision of a private right of action, Congress did not intend to eviscerate that right. Rather, Congress intended to maintain the broad right to bring suit in federal court that it believed already existed.

An implied right of action is also consistent with the underlying purposes of the statutory scheme. Defendants correctly note that the 1987 Act was designed to strengthen the farm credit system. Defendants contend that implying a right of action will weaken that system by creating costly litigation. The 1987 Act requires defendants to make cost-effective decisions concerning the possibility of restructuring loans. The Harpers brought this action for injunctive relief to require defendants to weigh the costs of restructuring against the costs of foreclosure before proceeding. They do not seek money damages. This suit, rather than weakening the system, seeks to force defendants to make an economical decision. Implying a private right of action for injunctive relief is consistent with the broad rights for borrowers and the mandatory duties for lenders created under the Act.

Finally, the rights created under the 1987 Act are exclusively federal. Congress created a comprehensive agricultural credit system aimed at keeping farmers on their land. Protection of the rights under the 1987 Act is not a traditional state concern nor is it addressed by state law.

I find that Congress intended to imply a private right of action to enforce borrowers' rights under the 1987 Act.

2. *Violation of the Act.*

The Act provides:

LIMITATION ON FORECLOSURE

No qualified lender may foreclose or continue any foreclosure proceeding with respect to any distressed loan before the lender has completed any pending consideration of the loan for restructuring under this section.

12 U.S.C. § 2202a(b)(3).

■ When the Act took effect, defendants had obtained default judgments of foreclosure in state court. Defendants contend that they had no obligation under the Act to consider restructuring after the judgments entered. The Harpers contend that the sheriff's sale was the continuation of a foreclosure proceeding in violation of the Act.

Defendants contend that the Harpers' loan was reduced to a judgment and therefore cannot be restructured. Defendants contend that the Act requires balancing prospective costs of foreclosure against the costs of restructuring. Because the costs of foreclosure are prospective, defendants contend that Congress could not have intended the Act to apply after a foreclosure judgment has been obtained and the costs incurred.

Not all costs are prospective. *See e.g.* 12 U.S.C. § 2202a(a)(2)(A) (value of loan). Moreover, by requiring defendants to make the calculation prior to the continuation of a foreclosure sale, Congress assumed some costs would already be incurred. By stating that no lender shall continue a foreclosure proceeding without first considering restructuring, Congress intended a complete moratorium on all foreclosure proceedings. Under state law, the Harpers retained the right to terminate the foreclosure decree prior to the sheriff's sale. ORS 88.100. Defendants by pursuing the sheriff's sale continued the foreclosure in violation of their obligations under the Act.

Defendants contend that junior lienholders may be adversely affected by applying the Act to instances where foreclosure judgments have already entered. The possibility appears more hypothetical than real. As plaintiffs point out, and defend-

ants concede, other districts have suspended all foreclosures and offered borrowers the right to apply for restructuring regardless of the state of foreclosure proceedings. FLB admits that it too has offered at least five borrowers the right to consideration of restructuring even after a judgment of foreclosure has entered. Moreover, all junior lienholders in this action are members of the farm credit system and subject to the requirements of the Act. After the effective date of the Act, defendants chose to continue with the sheriff's sale in violation of their duties under the Act. Defendants are responsible for any problems that may result from the continuation of the foreclosure proceeding. Finally, if defendants discover that it is more cost-effective to restructure the Harpers' debt rather than to continue the foreclosure, then all parties will be placed *in statu quo ante*, as though the foreclosure had not occurred.

3.. *Anti–Injunction Act.*

The Anti–Injunction Act provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

■■ The Anti–Injunction Act prohibits enjoining a state court proceeding at any time from its institution to the close of final process. *Hill v. Martin*, 296 U.S. 393, 56 S.Ct. 278, 80 L.Ed. 293 (1935). The prohibition cannot be avoided by naming only parties and not the state court, where the effect is to prevent the parties from proceeding with the state court action. *Los Angeles Memorial Coliseum Comm'n v. City of Oakland*, 717 F.2d 470 (9th Cir. 1983).

The Anti–Injunction Act is an absolute bar to any injunction against a state court proceeding unless the injunction falls within one of the three narrow exceptions. *Chick Kam Choo v. Exxon Corp.*, ⸺ U.S. ⸺, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). Here, the question is whether an injunction to enforce the 1987 Act would

fall within the "expressly authorized" exception to the Anti–Injunction Act.

■■ To qualify under the "expressly authorized" exception, a federal law need not contain an express reference to the Anti–Injunction Act or expressly authorize an injunction against a state court proceeding. *Mitchum v. Foster*, 407 U.S. 225, 237, 92 S.Ct. 2151, 2159, 32 L.Ed.2d 705 (1972). "The test, rather, is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Id.* at 238, 92 S.Ct. at 2160 (citations omitted).

In *Mitchum*, the Supreme Court held, based on an extensive review of the legislative history, that 42 U.S.C. § 1983 was within the expressly authorized exception to the Anti–Injunction Act. *Id.* at 242, 92 S.Ct. at 2162. In *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 635, 97 S.Ct. 2881, 2889, 53 L.Ed.2d 1009 (1977) (plurality opinion), the Supreme Court held that the legislative history of section 16 of the Clayton Act was void of congressional intent to authorize an injunction of state court proceedings. The Court noted that Congress was not concerned with the possibility that state court proceedings would be used to violate the antitrust acts, nor did Congress focus on a scheme which used state court litigation. *Id.* at 634, 97 S.Ct. at 2889. The Court stated that absent such legislative history or other evidence of congressional authorization, the antitrust statute did not fall within the expressly authorized exception to the Anti–Injunction Act. *Id.* at 635, 97 S.Ct. at 2889.

■■ Here, the Farm Credit System lenders use state court foreclosure proceedings when a farmer can no longer meet his financial obligations. Congress intended to stop the flood of state court foreclosures with the 1987 Act. When introducing the 1987 Act, Senator Pryor explained:

The Farm Credit System was established to ensure the existence of a viable source of credit on reasonable terms for farmers at times when the market will not

provide such credit. The Farm Credit System's historical mission has been to strengthen participation in agriculture, by broadening the availability of credit to borrowers ... Unfortunately, during the crises of the past few years the managers of the Farm Credit System seem to have forgotten whom their cooperative was established to serve. In many parts of the country the Farm Credit System looked to foreclosure as a first resort rather than a last resort. ... The bill that we introduce today is aimed at reestablishing Farm Credit System policies that will help farmers in need of help and at preserving local control of the Farm Credit System.

S. 1156, 100th Cong., 1st Sess., 133 Cong. Rec. 6102–03 (May 6, 1987).

Senator Melcher stated:

Before this crisis becomes a disaster, Mr. President we must do something to lift this crushing burden from the back of rural America. We must get system interest rates down and stop the wholesale foreclosure and forced liquidations of family farms and ranches.

S. 1665, 100th Cong., 1st Sess., 133 Cong. Rec. 11725 (August 7, 1987).

Representative Jones stated:

In summary I want to let the system and FCA know that together they destroyed the integrity of the 1985 Farm Credit Act and necessitated this year's legislation. The Congress cannot tolerate such irresponsible action again and we expect the system and its regulator to diligently undertake their respective responsibilities and to cooperate in those matters that are necessary to ensure that full advantage is taken of the provisions of the new law.

H.R. 3030. 100th Cong., 1st Sess., 133 Cong.Rec. 11873 (December 18, 1987). Senator Melcher described the Act as providing "an agressive program of borrowers' rights to protect the individual borrowers." *Id.* at 18463 (December 19, 1987).

Senator McClure explained:

The most important part of this legislation ... is the restructuring of farm loans of financially stressed farmer-bor-

rowers of the System. In order to keep these farmers on the land it is necessary for System banks and associations to change their attitude toward debt restructuring. In the past if a farmer was delinquent or late in payment, it was almost automatic that the bank or association began foreclosure or liquidation action. The banks and associations were not focused on helping the farmer through restructuring. With mounting losses, it became clear that doing business as usual would not suffice. A more lenient attitude was needed. Because this was not forthcoming from the System, Congress made restructuring an integral part of the financial assistance package. If System banks were to receive assistance from the Congress, they must restructure farmer loans where it is cheaper. This legislation requires restructuring of farmer loans if it is the least cost alternative.

*Id.* at 18469–70.

Both the House and the Senate were concerned about the system lenders' past abuses of state court foreclosure proceedings. Congress therefore structured the Act to preclude the institution or continuation of a state court foreclosure proceeding until the lender considered restructuring. By prohibiting the continuation of a foreclosure proceeding, the Act encompasses the use of injunctions by a federal court to stop state court foreclosure proceedings which continue in violation of the Act. The Act, together with the legislative history, establish congressional authorization so that the 1987 Act falls within the expressly authorized exception of the Anti–Injunction Act. The Anti–Injunction Act does not bar injunctive relief under the 1987 Act.

Even if the Act did not fall within the expressly authorized exception, injunctive relief in this action would not be barred by the Anti–Injunction Act. The Harpers allege that FLB and WPCA have used the state court foreclosure proceeding to violate their federal rights under the 1987 Act. These allegations present the elements of a section 1983 claim. In other words, defendants, under color of state

law, have deprived the Harpers of their federal rights under the 1987 Act. *See e.g. White v. White,* 731 F.2d 1440 (9th Cir. 1984) (federal court has jurisdiction over section 1983 claim even when state action takes the form of a state court proceeding); *Miofsky v. Superior Court,* 703 F.2d 332 (9th Cir.1983)(same). The Supreme Court held in *Mitchum* that claims under section 1983 are not barred by the Anti–Injunction Act and therefore relief is appropriate.

### 4. *Tenth Amendment.*

■ Defendants contend that this action is barred by the Tenth Amendment, citing *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Defendants argue the tenth amendment applies where a federal statute regulates the state as a state, in areas of state sovereignty, which directly impair the states' ability to structure traditional governmental functions. *But see Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (overruling traditional versus non-traditional test).

The 1987 Act raises none of these considerations. The Act regulates Farm Credit System lenders, not the state. 12 U.S.C. § 2202a(a)(6). The regulations create duties for those lenders, unrelated to any area of state sovereignty, and do not interfere with the state's ability to structure integral governmental functions. The Tenth Amendment does not bar this action.

### 5. *Estoppel.*

■ Defendants contend that plaintiffs are estopped from seeking restructuring because they failed to assert their rights under prior regulations and stipulated to the WPCA judgment. Defendants contend that the Harpers brought this action only to delay the enforcement of the state court foreclosure decrees.

The Harpers contend that they never stipulated to the WPCA judgment of foreclosure. In his affidavit, Myron Harper stated that he and his wife never autho-

rized their prior attorney, Roger Anunsen, to stipulate to the decree or to allow the decrees to be entered. He stated that both judgments were taken without their knowledge.

Defendants submit the deposition of Roger Anunsen. He stated that he never spoke to the Harpers about the default judgments, nor did he send them copies of those documents. He thought he had authority to stipulate to the WPCA judgment because the Harpers had generally agreed to cooperate with the farm credit institutions while they sought an attorney to proceed with a Chapter 12 bankruptcy. Mr. Anunsen also stated that Mr. Harper is an honest man and if Mr. Harper believed that he had not authorized a stipulated judgment, then that was true.

I find the Harpers never authorized their prior attorney to stipulate to the judgment in favor of WPCA. That judgment was entered without the Harpers' knowledge or consent. The Harpers have fought the foreclosure proceedings at every stage. They have twice sought the protection of bankruptcy court and twice asked this court for injunctive relief. The Harpers properly seek to enforce their rights under the 1987 Act. The doctrine of estoppel does not bar their claims.

### 6. *Failure to State a Claim.*

■ Defendants contend that the Harpers have failed to state a claim against WPCA. Plaintiffs allege that WPCA claims an interest in their property under prior mortgages. Plaintiffs also allege that their rights under the 1987 Act were violated by the continuation of the foreclosure proceeding. As a lender subject to the requirements of the Act, WPCA had a duty to weigh the costs of restructuring versus the costs of foreclosure prior to proceeding with the sheriff's sale. Plaintiffs have stated a claim against WPCA.

### CONCLUSION

The Agricultural Credit Act of 1987 provides an implied right of action for borrow-

ers to enforce their rights to restructure their debts under the Act. FLB and WPCA violated the Agricultural Credit Act of 1987 by continuing the state court foreclosure action against the Harpers' property after the effective date of the Act. FLB and WPCA had a duty to weigh the costs of foreclosure against the costs of restructuring, prior to proceeding with the sheriff's sale.

Defendants FLB, WPCA, and the Hennys are ENJOINED from evicting the Harpers from their property until FLB and WPCA afford the Harpers consideration of restructuring their distressed loans as required under the 1987 Act.