# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3265
No. 98-3413

_____

| | | |
|---|---|---|
| Marvin Fielder, et al., individually and on behalf of a class of similarly situated individuals, | * * * * | |
| Plaintiffs - Appellees/ Cross - Appellants, | * * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| Credit Acceptance Corporation, | * * | |
| Defendant - Appellant/ Cross - Appellee. | * * | |

_____

Submitted:  April 19, 1999

Filed: August 31, 1999
_____

Before McMILLIAN, LOKEN, and MURPHY, Circuit Judges.
_____

LOKEN, Circuit Judge.

Credit Acceptance Corporation ("CAC") financed used car sales in Missouri by taking assignments of retail installment purchase contracts between car dealers and purchasing consumers.  If the buyer defaulted, CAC typically repossessed the vehicle,

which was collateral for the defaulted loan. CAC then sold the car, applied the net sale proceeds against the defaulted loan, and sued the buyer in state court for any remaining loan deficiency. In many of those deficiency actions, the debtor failed to appear, and CAC obtained a default judgment for its claimed deficiency.

Marvin Fielder commenced this class action in a Missouri state court against CAC and a Missouri car dealer, alleging that he was charged for official fees never paid to public officials, and for post-maturity interest on his defaulted loan at a higher rate than his installment sales contract provided. Fielder's official fee overcharge claims included an alleged violation of the federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq*. Based upon that single federal question, CAC removed the entire case. See 28 U.S.C. § 1441. In federal court, plaintiffs filed three amended complaints adding additional plaintiffs, additional state law claims, and additional prayers for relief. At plaintiffs' request, the district court certified two classes, an "official fee overcharge class" and an "interest overcharge class."

Plaintiffs then moved for partial summary judgment in favor of both classes. The district court denied the motion as to the official fee overcharge class, finding genuine issues of material fact as to those claims. The court granted summary judgment declaring CAC liable on many state law claims of the interest overcharge class and entered a sweeping permanent injunction requiring, *inter alia*, that CAC amend countless deficiency judgments previously entered by state courts against many members of that class. CAC appeals, arguing the Rooker-Feldman doctrine deprives the federal courts of jurisdiction to amend state court deficiency judgments, the Missouri consumer protection statutes in question do not authorize this class-wide relief, and the district court abused its discretion in entering the injunction. We have jurisdiction over interlocutory appeals from orders granting permanent injunctions. See 28 U.S.C. § 1292(a)(1). We conclude there is no federal question jurisdiction over the interest overcharge class's claims, the Rooker-Feldman doctrine deprives the district court of jurisdiction to amend state court deficiency judgments, but the entire case

should not be remanded because of the pending Truth in Lending claims. Accordingly, we vacate the permanent injunction and remand with directions to sever the two classes so that the interest overcharge class may be remanded to state court while the district court proceeds to resolve at least the federal claims of the official fee overcharge class.

## A. The Class Members' Claims.

CAC provides auto dealers a source of financing for used car purchasers with poor or limited credit histories. CAC supplies dealers with retail installment contract forms containing numerous blanks to be filled in by the dealer and the purchaser before the contract is signed. The dealer then assigns the completed contract to CAC, and CAC administers and collects the loan from the purchaser.

1. The Official Fee Overcharge Claims. The contract forms contain an "Itemization of Amount Financed" section which includes a number of blank spaces for itemizing the finance charges for a particular sale. One blank is entitled charges "To Public Officials." In plaintiff Fielder's contract, this blank was filled in with $43.60, and that amount was added to the total Amount Financed, whereas a different dealer filled in this entry in plaintiff Henderson's contract with a charge of $8.50 for "Lic, Titl, Reg, Insp Fee." The official fee overcharge class plaintiffs allege that any amounts charged for official fees in excess of $8.50 or $10.00 violate the Missouri Motor Vehicle Time Sales Act, MO. REV. STAT. ch. 365. The Truth in Lending subclass argues that these excess amounts were undisclosed finance charges and subject CAC to class action liability of "not more than the lesser of $500,000 or 1 per centum of the net worth of the creditor." 15 U.S.C. § 1640(a)(2)(B). The district court concluded that genuine issues of material fact preclude summary judgment on these claims.

2. The Interest Overcharge Claims. The contract forms contain blank spaces for "Annual Percentage Rate" and "Post-Maturity Interest" rate. In Fielder's contract, the

APR was 22% and the Post-Maturity rate was 9%. In Henderson's contract, the APR was 18% and the Post-Maturity rate was left blank. The district court found that CAC has sought and obtained default judgments for post-maturity interest at rates of 18-23% under contracts in which the post-maturity rate entry was 9% or left blank. The interest overcharge plaintiffs allege, and the district court agreed, that these interest overcharges violated MO. REV. STAT. §§ 365.100, 407.020, and 408.020, giving rise to class-wide damage and equitable relief under §§ 365.150, 407.025, and 408.562. These plaintiffs further allege, and the district court found, that CAC charged compound interest in its deficiency actions in violation of §§ 365.100 and 408.080, calling for relief under §§ 365.150 and 408.562. In addition, these plaintiffs allege that CAC's post-sale notices violated § 408.557, that its pre-sale notices violated §§ 400.9-504 and 9-506 of the Missouri Uniform Commercial Code, and that the deficient pre-sale notices led to pleadings in CAC's deficiency suits that violated § 408.556. The district court rejected the post-sale notice claims but held that some of CAC's pre-sale notices and deficiency suit pleadings violate the Missouri UCC.

3. Relief Granted. Based upon its findings and conclusions, the district court entered an eleven-paragraph permanent injunction in favor of the interest overcharge class. We need not summarize all the terms of this lengthy injunction. CAC contends that many subparts of the injunction fail to comply with the Rule 65(d) requirement that every injunction "shall be specific in terms [and] shall describe in reasonable detail . . . the act or acts sought to be restrained."[1] See generally Rhone-Poulenc Rorer Pharms., Inc. v. Marion Merrell Dow, Inc., 93 F.3d 511, 517 (8th Cir. 1996). Putting that question aside, the more narrow issue we must address, because of its profound impact

---

[1]For example, one paragraph provides, "CAC is permanently enjoined from giving pre-sale notices that fail to comply with Missouri's Uniform Commercial Code." A provision that essentially requires a party to obey the law "may be struck from an order for injunctive relief." Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd., 824 F.2d 665, 669 (8th Cir. 1987).

on the entire case, is the district court's jurisdiction to order the following equitable relief:

> 6. CAC shall move for the default judgments based on excessive post-maturity interest and compound post-maturity interest [to] be amended nunc pro tunc consistent herewith in the issuing [state] court.

## B. The Rooker-Feldman Problem.

A federal court must give the same preclusive effect to a state court judgment that the judgment would be given in courts of the rendering state. See 28 U.S.C. § 1738. In Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), the Supreme Court took this principle a step further and held that lower federal courts *lack jurisdiction* to review state court judgments. The doctrine also deprives lower federal courts of jurisdiction over claims that are "inextricably intertwined" with claims adjudicated in state court. See Feldman, 460 U.S. at 482 n.16. On the other hand, a claim -- particularly a claim under federal law -- is not precluded if it is "separable from and collateral to the merits of the state-court judgment." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 21 (1987) (Brennan, J., concurring) (quotations and citations omitted). A claim is inextricably intertwined under Rooker-Feldman if it "succeeds only to the extent that the state court wrongly decided the issues before it [or] if the relief requested . . . would effectively reverse the state court decision or void its ruling." Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995).

In this case, the district court ordered CAC to amend numerous state court judgments nunc pro tunc because those judgments were based upon excessive interest charges. In granting this relief, the court acted precisely like an appellate court, effectively reversing part of the state court decision. It does not matter for Rooker-Feldman purposes that the court accomplished its reversal indirectly, by ordering CAC

to apply to the state courts for amended judgments. In <u>Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers</u>, 398 U.S. 281, 287 (1970), the district court attempted to circumvent the Anti-Injunction Act, 28 U.S.C. § 2283, by enjoining the party who prevailed in state court "from giving effect to or availing [itself] of the benefits of" the state-court order. The Supreme Court reversed, noting that "[i]t is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." The <u>Rooker-Feldman</u> doctrine serves comity interests like those underlying the Anti-Injunction Act. Thus, <u>Atlantic Coast Line</u> is controlling.[2]

The district court denied CAC's motion to dismiss based upon <u>Rooker-Feldman</u> because plaintiffs' "requests for relief do not center on the fact that the Missouri state court default judgments are inherently wrong but rather focus on the correctness of the calculation of the award of [deficiency] damages." That is not a valid distinction. A state court judgment upholding a damage claim necessarily includes a determination of the damages to be awarded. Thus, the amount of damages has been litigated (whether or not in a default judgment proceeding), and any subsequent recalculation by a federal court is a direct, appellate-like reversal of the state court, precisely the kind of lower federal court appellate review that <u>Rooker-Feldman</u> bars. <u>See</u> <u>Snider v. City of Excelsior Springs, Missouri</u>, 154 F.3d 809, 812 (8th Cir. 1998). The district court also

---

[2]CAC argues that this aspect of the district court's injunction violates the Anti-Injunction Act. We agree. The Act prohibits injunctions interfering with the enforcement of state court judgments. <u>See</u> <u>Hill v. Martin</u>, 296 U.S. 393, 403 (1935). No recognized exception to the Act's blanket prohibition applies. <u>See</u> <u>Mitchum v. Foster</u>, 407 U.S. 225, 234-36 (1972). Plaintiffs argue that CAC failed to raise this issue in the district court, but CAC was not obliged in preparing its summary judgment motion papers to anticipate that the court's final order would violate the Anti-Injunction Act. Plaintiffs further argue that there is a fraud exception to the Act's prohibition, but they cite only cases prior to the Act's recodification in 1948 and the Supreme Court's decision in <u>Mitchum</u>. In any event, the district court made no finding of fraud to justify its order enjoining CAC from collecting its full state court judgments.

noted that many of the claims and defenses now asserted by the interest overcharge class were not litigated in the state court actions. Given the default nature of those deficiency proceedings, that is no doubt true. But Rooker-Feldman precludes a lower federal court from asserting jurisdiction to amend a state court judgment based upon defenses the losing party failed to raise. That is the essence of the "inextricably intertwined" corollary.

Finally, the district court alluded to, and plaintiffs argue on appeal, a fraud-on-the-court exception to the Rooker-Feldman doctrine. There are multiple problems with this contention. First, while various courts have referred to a possible fraud exception in dicta, see, e.g., Raddatz v. Beaubien, 880 F. Supp 500, 503 (E.D. Mich. 1995), to our knowledge the only court to address the issue held there is no fraud exception. See Simpson v. Putnam County Nat'l Bank, 20 F. Supp. 2d. 630, 633-34 (S.D.N.Y. 1998). In general, we have been unwilling to create piecemeal exceptions to Rooker-Feldman. See Goetzman v. Agribank, FCB, 91 F.3d 1173, 1178 (8th Cir.) (no procedural due process exception to Rooker-Feldman), cert. denied, 519 U.S. 1042 (1996). Second, the district court in this case made no finding that CCA committed fraud on the state courts. The fact that CAC sought awards of excessive post-maturity and compound interest does not mean it committed fraud on the courts when the defendants defaulted.

Third, the parties debate on appeal when Missouri courts permit an attack on a judgment based upon fraud on the court, whether the attack must be mounted in the court that initially entered the judgment, whether it matters if the fraud was "extrinsic" or "intrinsic," and so forth. The points being debated are relevant only if Rooker-Feldman is no broader than the state law of claim preclusion, as plaintiffs contend. While there may be some logic to this point of view, it has not prevailed among the lower federal courts that have struggled to apply this often enigmatic Supreme Court doctrine. The prevailing view is that Rooker-Feldman is at least somewhat broader, or perhaps more rigid, than the state law of claim preclusion, a view that is sensibly based upon the notion that whether a state court judgment should be subject to collateral

attack or review is an issue best left to the state courts.  See Kamilewicz v. Bank of Boston, 92 F.3d 506 (7th Cir. 1996), cert. denied, 520 U.S. 1204 (1997).[3]

For the foregoing reasons, we conclude the Rooker-Feldman doctrine deprived the district court of jurisdiction to grant injunctive relief that effectively amended the state court deficiency judgments.

### C.  A Resulting Jurisdictional Dilemma.

Our conclusion that the district court had no jurisdiction to afford the interest overcharge class some of the injunctive relief they seek leaves the case in a jurisdictional quandary.  Members of the class who seek relief from deficiency judgments would be better off in state court where it is possible -- though far from certain -- that the court would entertain a class-wide attack on those judgments, for example, on the ground they were obtained by extrinsic fraud on the court.  See, e.g., Davis v. Southwestern Bell Tel. Co., 333 S.W.2d 31, 35 (Mo. 1960); Johnson v. Stull, 303 S.W.2d 110, 115-16 (Mo. 1957); McCarty v. McCarty, 300 S.W.2d 394, 400-01 (Mo. 1957); Sutter v. Easterly, 189 S.W.2d 284, 287-88 (Mo. 1945); Williams v. Williams Paper Co., 750 S.W.2d 721 (Mo. App. 1988).  On the other hand, though Rooker-Feldman prevents these class members from obtaining this relief, it does not deprive the district court of jurisdiction to afford the class other types of relief.  Cf. Canal Capital Corp. v. Valley Pride Pack, Inc., 169 F.3d 508, 513 (8th Cir. 1999).

---

[3]Most scholars do not look kindly on the Rooker-Feldman doctrine, but one critic has commented:  "if there is a place for *Rooker-Feldman*, it is as an abstention doctrine under which disappointed state court litigants may not go to federal district court to complain about harm they suffered at the hands of state courts when the state courts would not entertain the action or where there is substantial doubt over whether the state court would entertain the action."  Beermann, Comments on *Rooker-Feldman* or Let State Law Be Our Guide, 74 NOTRE DAME L. REV. 1209, 1213 (1999) (emphasis added).

The jurisdiction plot thickens when we recall the federal question underpinnings of the entire lawsuit. The only federal claim in the case is the Truth in Lending claim asserted by some of the official fee overcharge class. After removal, plaintiffs filed three amended complaints adding more named plaintiffs, more state law claims, and an express prayer by the interest overcharge class for relief from the state court deficiency judgments. But the interest overcharge class has asserted *no* federal question claims. This class may remain in federal court only if the district court has supplemental jurisdiction over its claims. The district court has supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The claims of the individual members of a permissive class are distinct cases and controversies; each must separately support federal jurisdiction. See Snider v. Stimson Lumber Co., 914 F. Supp. 388, 390-91 (E.D. Cal. 1996). Thus, only interest overcharge class members who have also asserted a Truth in Lending claim are properly in federal court.

One answer to this dilemma would be to remand the entire case to state court, where all plaintiffs may litigate all their claims and prayers for relief. If the district court or the plaintiffs who have Truth in Lending claims had dismissed those claims, this would clearly be an option, because in that situation the federal court has discretion to decline to exercise its supplemental jurisdiction *and* to remand remaining state law claims to the state court from which they were removed. See 28 U.S.C. § 1367(c); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988); In re Prairie Island Dakota Sioux, 21 F.3d 302, 304 (8th Cir. 1994). However, the Truth in Lending claims have not been finally resolved, and in Williams v. Ragnone, 147 F.3d 700, 703 (8th Cir. 1998), we broadly held that, because one federal claim was present, the "entire case was properly removed, and the district court was therefore without discretion to remand it." (Emphasis added.)

Williams v. Ragnone considered only the question of supplemental jurisdiction under § 1367(c) and the authority to remand under Cohill. It did not consider the district court's remand authority under 28 U.S.C. § 1441(c), which provides:

> Whenever a separate and independent claim or cause of action within the [district court's federal question jurisdiction] is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

Section 1441(c) was amended in 1990. Prior to those amendments, the term "separate and independent" in § 1441(c) was narrowly construed as *not* encompassing claims within the federal court's pendent jurisdiction, that is, those arising out of "a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see Cohill, 484 U.S. at 348-355. Because the amendments limited § 1441(c) to federal question removals and were intended to increase federal court discretion to remand, a number of courts have debated whether the term "separate and independent" now refers only to the nature of the claim, rather than to the underlying factual nucleus, and whether district courts in applying § 1441(c) may remand the entire case, *including unresolved federal claims*, provided that "State law predominates." See Eastus v. Blue Bell Creameries, L.P., 97 F.3d 100 (5th Cir. 1996); In re City of Mobile, 75 F.3d 605 (11th Cir. 1996); Administaff, Inc. v. Kaster, 799 F. Supp. 685, 689 & n.9 (W.D. Tex. 1992). The broader construction of § 1441(c) would permit remand of this entire case.

As we may have discretion to remand the entire case, it is appropriate to consider whether to do so. In determining whether a federal court should exercise supplemental jurisdiction *after* all federal claims are resolved, we look to the factors set forth in § 1367(c), which include whether the state law claims raise novel or complex issues of State law, and whether they substantially predominate over the federal question claim the court has now resolved. In this case, in granting partial

summary judgment and sweeping injunctive relief, the district court recognized that it was addressing many complex substantive and remedial issues of first impression under the Motor Vehicle Time Sales Act, MO. REV. STAT. ch 365, the Merchandising Practices Act, MO. REV. STAT. ch. 407, the Legal Tender and Interest provisions of MO. REV. STAT. ch. 408, and Part 5 of Article 9 of the Missouri Uniform Commercial Code. These issues include:

- Whether there is a private right of action for violations of Chapter 365.

- Whether Chapter 365 applies to CAC contracts where the cash sale price exceeded $7,500. See § 365.020(5).

- Whether CAC violated § 365.100 by charging excess post-maturity interest and, if so, whether § 408.020 governs contracts with empty post-maturity rate blanks, and whether class members are entitled to the remedies in §§ 365.150 and 408.562.

- Whether § 407.020 applies to these transactions.

- Whether CAC's deficiency suit pleadings failed to comply with §§ 400.9-501 through 9-507 and, if so, are plaintiffs entitled to the remedies of §§ 408.556-408.562.

- Whether § 408.562 authorizes relief on a class-wide basis.

In addition, the district court has yet to reach the damage claims of the interest overcharge class, which will raise additional important issues of first impression. These are novel, complex, and important issues of state law on which the Missouri appellate courts have given us little or no prior guidance. Thus, they are precisely the types of issues as to which federal courts should hesitate to exercise § 1367 supplemental jurisdiction. See Women Prisoners of the D.C. Dept. of Corrections, 93 F.3d 910, 921-22 (D.C. Cir. 1996), cert. denied, 520 U.S. 1196 (1997); Anglemyer v. Hamilton

County Hosp., 58 F.3d 533, 541 (10th Cir. 1995); Parker & Parsley Pet. Co. v. Dresser Inds., 972 F.2d 580, 589 (5th Cir. 1992).

### D. A Way Out of the Morass.

Based upon the foregoing assessment, we summarize the present jurisdictional status of the case as follows:

1. The district court lacks supplemental jurisdiction over any member of the interest overcharge class who does not have a Truth in Lending claim, because the court has no original jurisdiction over that plaintiff's case or controversy. § 1367(a). In addition, the district court has no jurisdiction under Rooker-Feldman to alter or amend, or to order CAC to alter or amend, the state court deficiency judgments. Thus, the only forum in which the interest overcharge class may have all its claims and prayers for relief promptly and efficiently litigated is in state court.

2. While the interest overcharge class has asserted no claims under federal law preventing remand, the official fee overcharge class has asserted Truth in Lending Act claims that are still pending in the district court. These federal claims may not "predominate" the state law claims of the official fee overcharge class, and they clearly do not predominate the total claims asserted by both classes. In these circumstances, some courts have held that amended § 1441(c) permits remand of the entire case to state court. Because our opinion in Williams v. Ragnone did not discuss § 1441(c), it is not clear whether that decision forecloses a § 1441(c) remand of an entire case prior to resolution of federal claims. However, we need not reach that question in this case. The district court may afford complete relief to those members of the official fee overcharge class who have Truth in Lending claims. Therefore, there is little if any reason to remand this entire class to state court prior to resolution of its federal claims.

3. There are no doubt members of the interest overcharge class who have also asserted Truth in Lending claims. If their state law interest overcharge claims are "separate and independent" from their Truth in Lending claims in the traditional sense, there is no constitutional basis for the assertion of federal jurisdiction over those claims, and they must (at some point) be remanded. See United Mine Workers v. Gibbs, 383 U.S. at 725. Even if those claims are within the district court's supplemental jurisdiction because they arise from a "common nucleus of operative fact," they are the type of novel, complex, and predominating state law claims over which supplemental jurisdiction should be declined under 28 U.S.C. § 1367(c)(1) and (2). If these state law interest overcharge claims should ultimately be in state court, then it is in the interests of the class to remand promptly, whether remand is required under United Mine Workers v. Gibbs, or simply a proper exercise of discretion under § 1367(c)(1) and (2).

We conclude there is an effective way out of this jurisdictional dilemma which will permit both classes to promptly litigate all their respective claims and prayers for relief in an appropriate forum. The answer in our view is to sever the two classes under Fed. R. Civ. P. 21. This creates two independent actions in the district court, see E.S. v. Independent Sch. Dist. No. 196, 135 F.3d 566, 568 (8th Cir. 1998), which means that the interest overcharge class's case may be immediately remanded to state court because there is no basis for federal jurisdiction over that case. Rule 21 is often used to allow federal courts to escape a multi-party jurisdictional quandary. See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832-38 (1989). We recognize there is a major drawback to this procedure -- loss of the time and effort expended by the district court and the parties in litigating the claims of the interest overcharge class to this point. However, most of this effort will no doubt be usable as the case resumes in state court, and on balance we believe that allowing all claims of both classes to proceed simultaneously in courts of appropriate jurisdiction is the primary interest we must serve.

-13-

Accordingly, the August 4, 1998, order of the district court is vacated insofar as it related to the claims of the interest overcharge class, including the court's rulings on the parties' cross motions for summary judgment and its granting of permanent class-wide injunctive relief. The case is remanded with directions to sever the claims of the official fee overcharge class and the interest overcharge class into two separate actions, and for further proceedings not inconsistent with this opinion. Plaintiffs' cross-appeal is dismissed as moot. All motions to strike are denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.